GAVIN H. CLARK v. WILMINGTON & WELDON RAILROAD COMPANY.

*Railroad, suit against for ejecting passenger from train.*

In a suit against a railroad company for damages alleged to have resulted from the action of the conductor in ejecting the plaintiff from the train, it appeared that the plaintiff got on the train at a certain station to go to the next station about four miles distant, without a ticket or money to pay his fare. About twenty-five other persons took the same train to go to the same place, one of whom, as it was shown on the trial, promised to pay the plaintiff's fare before they got on the train, but he did not sit in the same car with the plaintiff. In taking up tickets and collecting fare from passengers, the conductor was told by the plaintiff that he had neither money nor ticket, but would get the money if allowed to go into the rear car and see a fellow-passenger. The conductor said "I have not time to wait, you must get off," and thereupon pulled the bell-rope, stopped the train, and put the plaintiff off. The train had made about half the distance between the stations;

CLARK *v.* RAILROAD.

*Held* that the plaintiff was entitled to recover.) The conductor should have allowed him a reasonable opportunity to pay his fare; but an offer to pay (and declined by the conductor) after the train was stopped will not entitle him to return to his seat.

(Mr. Justice MERRIMON, dissenting.)

CIVIL ACTION for damages tried at Spring Term, 1884, of HALIFAX Superior Court, before *Avery, J.*

The plaintiff sues to recover damages for ejection from defendant's passenger car.

On the 14th of June, 1883, the plaintiff got on the defendant's train at Whitaker's depot to be carried to Battleboro depot, about four miles distant. The fare between these stations was twenty-five cents, and when about half way between them, the plaintiff was ejected from the car by the conductor.

It was in evidence that before the train reached Whitaker's the plaintiff applied to one Powell for money to pay his fare, and Powell told him he would pay it on the train; and just before the train reached the depot he made a similar application to one Braswell who also was waiting to take the train, and Braswell also told him he would pay plaintiff's fare on the train. This evidence was objected to by defendant, but admitted by the court, and defendant excepted.

On boarding the train, Braswell took a seat in the rear car, the plaintiff in the one just ahead of it, and Powell in the same car with plaintiff or in the one ahead of it.

When the conductor came around to collect the fare, the plaintiff told him that he had neither ticket nor money with him, but that he would get the fare from a gentleman in the rear car, if he (the conductor) would allow him to do so. The conductor replied " you must get off—I have not time to wait for you, I have something else to do," and immediately pulled the bell rope, stopped the train, and ejected

the plaintiff, his train hands being present and able to enforce orders. There was no force used in the ejection except the order of the conductor (in the presence of his assistants) to leave the train.

When the conductor called on the plaintiff for his ticket or fare, he was on his way from the car where the plaintiff was to that where said Braswell was; and said Braswell was able, ready and willing to pay said fare. He did not know the plaintiff was ejected.

While the plaintiff was being ejected and on the lower steps of the car, said Powell offered to pay plaintiff's fare to the conductor, who declined to receive it.

The defendant asked the court to charge the jury as follows:

1st. " When the conductor demanded of the plaintiff his ticket, and he tendered neither ticket nor money, the conductor had the right to eject the plaintiff."

2nd. " There is no evidence that the conductor prevented or forbade the plaintiff from going to Braswell."

His Honor refused so to charge and the defendant excepted.

The only evidence on this point was that of the plaintiff himself, and of one William Stephens, introduced by the defendant. Plaintiff testified as follows:

Got on defendant's cars at Whitaker's, June 14th, 1883, but had no ticket. Conductor asked him for his ticket; told him he had none; conductor said "you must get off the train, then." Plaintiff said "if you will allow me to go into the other car, I will get money to pay the fare;" conductor ordered him off the train; Isaac Powell then offered to pay the twenty-five cents, which was the fare; conductor refused to take it, and put him off the train; did not go to the other car because the conductor did not give him time; conductor was going to the rear of the train and plaintiff proposed to go to next car in rear.

On cross-examination he said he had been drinking but was not drunk—was sick from effects of liquor—conductor did not put his hands on him—did not try to get to the other car, but could have gone in there if conductor had let him—did not go because brakeman could have put him off.

Twenty-five or thirty passengers got on at Whitaker's for Battleboro. Conductor said "you have to get off," and plaintiff told him before he rang the bell that he could get the fare from a man in the other car, but did not go to other car because conductor said "you have to get off."

William Stephens testified that he was and had been for five years a brakeman on said conductor's train; that conductor was going through and got to plaintiff and said, "give me your ticket," and plaintiff said, "I have'nt got a ticket," and conductor said, "give me your ticket or your fare or I'll put you off; make haste, I have'nt time to wait on you, I have something else to do;" and plaintiff said, "I have'nt got the money or a ticket either." . Then the conductor rang the bell, stopped the train, and helped the plaintiff off. Powell then said, "I will pay your fare," and the conductor remarked, "you are too late, go and attend to your own business." The train was moving off then, and the witness heard the plaintiff say something, but did not hear what.

The defendant asked the court to charge that plaintiff could not recover upon the testimony offered in his behalf (as set out above), but this was refused and defendant excepted.

The only other evidence for plaintiff was that of Braswell, who testified that plaintiff applied to him to pay his fare a few moments before the train came up, which he agreed to do, and would have done if he had been applied to for it, but no one called on him for it. The exception of defendant to this evidence was overruled. And upon cross-examination he stated that he did not think he was in same

car with plaintiff, and did not see plaintiff put off the train; that plaintiff was not a "fussy man."

His Honor, among other things, charged the jury, "that the conductor was not bound to go into the other car to get the fare from Braswell, but if Braswell had money and was ready and willing to pay the fare of plaintiff, and plaintiff told him before he stopped the car and started to eject him, that a friend in the next car would pay his fare, then the conductor ought to have allowed plaintiff a reasonable time to get the fare."  Defendant excepted.

"If the conductor started at the car where plaintiff was, and was passing through the train to collect fare or tickets, it was reasonable to allow plaintiff to go to the next car in rear to procure the money to pay his fare; and if the plaintiff did notify the conductor that a friend in the next car in rear would pay his fare, and the conductor stopped the train without allowing him time to go to the next car, and then ordered the plaintiff to get off, having at the time power to enforce obedience to his commands, then the plaintiff is entitled to recover, and they should respond to the first issue—yes."  Defendant excepted.

"If the plaintiff failed or refused to pay his fare when called upon by the conductor, and did not propose to get the money from another passenger, and there was no offer to pay the fare till the plaintiff was on the steps of the car and was being ejected, then the conductor was not bound to receive the fare at that time, and the jury would respond to the first issue—no."

Verdict for the plaintiff; judgment; appeal by defendant.

*Messrs. Mullen & Moore,* for plaintiff.
*Messrs. Day & Zollicoffer,* for defendant.

SMITH, C. J.  The plaintiff, while at Whitaker's station, on the defendant's road, awaiting the arrival of the train,

on which he intended to take passage for Battleboro, a station four miles distant, and being himself without money, made arrangements with two others, Isaac Powell and T. P. Braswell, who were also going on same train, in which each agreed to pay his fare of twenty-five cents, the charge between those points.

When the train came, all three, with twenty or more others, entered it, the plaintiff taking a seat in the forward coach, Braswell in that next behind, and Powell in that where the plaintiff was, or one next in front.

When the conductor was passing through the coaches, taking up the tickets and collecting fares, from front to rear of the train, he came to the plaintiff, who said he had neither ticket nor money, but would get the fare, if allowed to go to the coach behind, from a gentleman sitting there.

The conductor refused to do so, saying, "you must get off. I have not time to wait for you. I have something else to do." The train was then about half way between the stations, moving at a rapid rate, when the conductor stopped the train and compelled the plaintiff to get out.

Braswell would have advanced the money and paid the fare upon application. As the plaintiff descended from the coach and was on the lowest step, Powell offered to pay the fare, but the conductor declined to receive it, saying, "you are too late, go and attend to your own business."

In expelling the plaintiff there was no actual force employed against his person, but the order was given, and assistants were present to execute it, and the plaintiff submitted.

The action is to recover damages for this ejectment of the plaintiff, and the sole question raised by the appeal is, whether under the circumstances the conductor had a right to put the plaintiff off the train.

An instruction was requested for the defendant, in the charge given to the jury, in these words:

"When the conductor demanded of the plaintiff his ticket, and he tendered neither ticket nor money, the conductor had the right to eject the plaintiff."

This was refused, and instead the jury were directed as follows:

"The conductor was not bound to go into the other car to get the fare from Braswell, but if Braswell had money and was ready and willing to pay the fare of the plaintiff, and plaintiff told him before he stopped the train and started to eject him that a friend in the next car would pay his fare, then the conductor ought to have allowed plaintiff a reasonable time to get the fare."

The whole controversy is involved in these two instructions, the one refused and the other given.

There can be no question of the right of the officer, in charge of a train of passenger coaches, to remove any one who has entered and refused to pay his fare or produce his ticket, as evidence of its having been paid to some authorized agent of the company, unless he is travelling with its permission without.

Such refusal, in opposition to the rules of the company, presents a case which warrants the officer in charge to require such intruder to leave the train, and if necessary, to use such force as is sufficient to accomplish his ejectment. Nor, when the officer has stopped the train, and he is descending the steps and about to pass out, will a tender of the fare entitle him to return to his seat. He forfeits his right of carriage by such misconduct by breaking his own contract to pay when called on, and it is not regained by his repentance at the last moment, and after he has caused the inconvenience and delay to the company by his wrongful act. The adjudications fully recognize this authority in the carrier, and it is necessary to prevent imposition upon it. Ang. on Carr. § 609, note A; Thomp. Carr. Pass. 340, note 5.

CLARK v. RAILROAD.

Where there has been no refusal to pay the fare and the obligation not disputed, but for some reason, such as the mislaying of the ticket, or loss of pocketbook in which the money is kept, or other adequate cause which prevents a prompt response to the conductor's demand, it is but reasonable that an opportunity should be allowed the passenger to search for what is mislaid or lost, or to provide other means of payment, where the delay does not interfere with the regular duties of the officer in charge.

The delay in the present case would have been momentary, if indeed, any had been occasioned, in permitting the plaintiff to precede the conductor in passing into the next coach and getting the money in time for the call on Braswell or before Braswell had been reached. Instead of complying with this request, made in good faith, the conductor arbitrarily and instantly rang the bell and expelled the plaintiff, producing an interruption in the movement of the train that would have been rendered unnecessary if a brief time had been given to the plaintiff to get the money promised him.

This was a harsh exercise of power, injurious to the plaintiff and needless in the protection of the interests of the company.

The cases that uphold the right of the carrier company summarily to expel from its train a passenger who does not produce his ticket or pay when called on, as required by its regulations, are all, so far as we have examined, cases of a denial of the right to demand the fare, or a refusal to pay it upon some untenable ground, so that the conductor must submit or enforce his authority against the resisting passenger and prevent his riding unless he does pay.

The facts of this case do not bring it under the operation of the rule applicable to those who persistently and wrongfully resist the demand of the conductor, acting under directions of his principal and within the sphere of his neces-

sary powers, for the plaintiff acquiesces in the demand of his fare, and merely proposed to pass into an adjoining car to obtain the money, promised under a previous arrangement with a fellow passenger.

This view of the relations between the carrier and passenger is sustained by recent decisions.

In *Maples* v. *N. Y. & N. H. R. R. Co.*, 38 Conn., 557, the plaintiff had mislaid his commutation ticket, and could not at the moment when called on by the conductor, produce it, as he was, by the regulations of the company and the conditions of the issue of such ticket, required to do, while the conductor knew he had one and that the time limited therein had not expired. The conductor, regardless of the explanation and following the letter of his instructions, demanded the fare, and it not being paid, forced the plaintiff to leave the train. For this expulsion the plaintiff sued, and PARK, J., delivering the opinion in the supreme court, thus declares the law:

" The plaintiff was entitled to a reasonable time to find it (the ticket). The contract requires him to show his ticket to the conductor, but he was not bound to do so immediately when required. * * * Under such circumstances the plaintiff was entitled to ride as long as there was any reasonable expectation of finding it during the trip."

In *Hayes* v. *N. Y. Cen. Railroad Co.*, decided in the supreme court at the general term held in October last, reported in vol. 30, No. 24, Alb. Law Journal of Dec. 13th, 1884, the plaintiff had a ticket but failed to find and exhibit it to the conductor when called on; whereupon the bell was rung, the train stopped, and the plaintiff required to leave. Before the train came to a halt the plaintiff found his ticket and offered it to the conductor, who nevertheless compelled him to get off.

The court say, MERWIN, J., speaking for all the members: "If the ticket of the plaintiff was mislaid, and he

in good faith was trying to find it, he was entitled to reasonable time to enable him to do so, if he could, and if in case of failure to find it, after such reasonable opportunity, he was willing and ready to pay his fare, the conductor had no right to put him off." See *Railroad* v. *Garrett*, 8 Lea, (Tenn.) 438.

It is contended however that the short distance to be run over by the train before reaching the station at which the plaintiff was to debark did not admit of delay and rendered necessary prompt action on the part of the conductor, and it was the plaintiff's own fault to enter the coach without a ticket or the means of payment when the fare was required of him.

It does not appear in the case that prepayment of fare was necessary, and it is obvious that no appreciable time would have been lost in giving the plaintiff opportunity to call on Braswell and get the money to pay his fare. If this were a mere pretence, and such seems to have been the assumption on which this precipitate action of the officer was taken, a moment would have revealed it, and then the ejection would have been fully warranted.

The defence set up is an assertion of the right to remove from a train any passenger, who may not be ready at once to exhibit a ticket or pay his fare, notwithstanding he has the means at command by passing into an adjoining coach, and only asks time to do so. This rigid rule enforced would require every one to have possession of his own ticket, or the friend who has it to be near by, at the hazard of expulsion, if he did not.

In all cases a reasonable indulgence should be shown a passenger in his effort to comply with the rules of the company, and what is reasonable must be determined in connection with surrounding circumstances and in view of the facts of each case.

We think the plaintiff's request was reasonable, and that

the hasty and precipitate action of the conductor was in excess of the authority with which the law armed him.

The exceptions to the evidence are not tenable, for its only office was to show that the plaintiff had provided means to pay his fare, and did not intend to trespass upon the rights of the company.

In some of the states the right to eject for non-payment is restricted, so far as to require it to be at some station and not capriciously at any point, which might be at some very inhospitable spot endangering health if not life.

There is no error and the judgment must be affirmed.

MERRIMON, J., (*dissenting*). I do not concur in the judgment of the court in this case, and it being a case of some practical importance, I will state the grounds of my dissent.

One of the chief purposes of railroads is orderly, safe and prompt expedition in travel. It is the duty of the owners of such roads, whether persons or corporations, to provide and employ the best means in all respects to accomplish this important end. To do this, requires an immense outlay of capital, and very thorough organization and promptitude. The social and business interests, the spirit of the age in which we live, and our progressive civilization demand and require such expedition, secured by such means; and the law recognizes and provides for it, and for in its encouragement, in a vast variety of ways. It holds the owners of such roads to a high measure of amenability and responsibility. It likewise requires those who travel upon such roads and thus accept their benefits, to pay promptly, and just compensation therefor, to be orderly and reasonably prompt in all things about such travel, and to submit to reasonable regulations and restraints in connection therewith, in order that the convenience, comfort, safety and social business interests of the passenger may be cared for

and promoted, directly and indirectly, and the general purpose mentioned, subserved. There are mutual duties and obligations between such owners and those who travel upon their roads, and these, in their extent, are just as binding on one side as the other.

Among the duties of a passenger over railroads, is that to get on the train, carrying passengers, at proper times and places designated, with reasonable promptness—that is, as quickly as this can be done safely, employing the facilities provided for doing so, these being safe.

Another duty in that connection is, that he shall pay his fare for so travelling before he goes on the train, if this shall be required, taking evidence of this fact, usually called a "ticket." This is reasonable with a view to promptitude, as well as business order. Or, if he does not do so, he should go on the train prepared with the money to pay his fare with reasonable promptness when the conductor shall call for it. He must have the money in hand for this purpose, or so near about him in the hands of another, as that he will not delay the conductor unreasonably under the circumstances, and thus derange the course of business in collecting fares and in other respects on the train while it is rapidly moving on the way. It is but just that the passenger should be reasonably prompt in these respects, and if he is not, that he be put off the train as an intruder obstructing the course of business, and impairing the convenience, safety and expedition of other passengers, as well as interfering with the rights of the owners of the road, and those of others not on the train depending more or less upon the promptitude of the train in reaching its destination. The authorities on the train must be circumspect, careful and prompt to keep time and secure expedition. It is unreasonable in every view, as it seems to me, to allow the passenger, without money, under the circumstances in this case, as of right, to go from one car to another on the train while

moving on the way, to get his "fare from a gentleman in the rear car."

These views seem to me just and reasonable, looking at the rights of the individual passenger, the rights of all other passengers on the train, the rights of the carrier and the general good of the public as subserved by public carriers.

In this case, the plaintiff got on the defendant's passenger train at one station on its road to ride to another four miles distant. He did not prepay the fare, and he went on the train knowing that he did not have the money with which to pay it when called for, nor did he pay it when called for by the conductor in the course of collecting fares. If this were all, it is obvious that the conductor had the right to put him off as an intruder.

But while saying that he had no ticket or money to pay the fare, he said "he would get the fare from a gentleman in the rear car, if he (the conductor) would allow him to do so, but he did not say that any gentleman had promised to pay it.

Was it the duty of the conductor to give him time, as of right, to go into the rear car, and get the money? I think not. The train was the passenger train, moving, it must be taken, at a rapid rate of speed; the distance was four miles; about half that distance had been passed over before the conductor, in the course of his duties in collecting fare, reached the plaintiff; the plaintiff had no ticket or money to pay the fare. The presumption, as to the conductor, it may be fairly said, was that the plaintiff would pay the fare until he refused, or failed to pay—then the presumption was against him. He was bound to know the necessity of reasonable promptitude on his side as to the fare. He did not have the money to pay it. Then why did he not get it before he got on the train? Failing in this, why did he not get it after he got on the train, and have it ready? If for any reason he was

not to be trusted with it, why did he not get near to the person who was to pay it for him, so as not to create delay, or strong suspicion that he did not intend to pay it? It was his plain duty to do this. As he did not, in the absence of assurance other than his own declaration—" that he would get the fare" in the way indicated, unsupported by the circumstances, but in fact discredited by them, there was strong evidence for the inference on the part of the conductor that he was an intruder, intending to get the ride without paying for it. It does not appear that he was responsible, or that the conductor knew him, and that he was trustworthy, if such circumstances could, in any case, be urged in his favor.

But it is said, that nevertheless, the conductor ought to have given him time to go in the rear car and get the money to pay the fare. The conductor had no reasonable assurance that he would or could get it—the circumstances and facts before him went strongly to show that he would not. If the conductor had allowed him to go into the rear car, before he could have done so and returned to the conductor in the course of his business, or failing to get the money, before the conductor could have put him off, the station to which he was going would probably have been reached, and he would have gotten his ride without paying for it, and could have laughed at the success of his trick and the unbusiness-like credulity of the conductor.

There was no time for such delay in this, or any like case on passenger trains. A rule that allows a passenger to go from one car to another to get money to pay his fare, under the circumstances of this case, is, in my judgment, unreasonable. Such a rule affords opportunity for frequent successful frauds upon public carriers where parties, and often times irresponsible parties, want to travel short distances. In a few minutes the train passes from one station to an-

other; and the collection of fares must be prompt and passengers required to prepare for prompt payment. The train cannot be delayed to collect fares before it starts on the way ; this would delay and impede travel in a way not allowable. The more reasonable and just rule would be to require the passenger to be prepared, especially when the distance is short, as in this case, to pay his fare promptly, or, failing to do so, to run the hazard of being put off the train.

If one passenger has the right, as allowed in this case, two, a half dozen, have the same right, and all might claim and exercise it !

It seems to me, with all due deference to my brethren, that there is no real necessity for the rule as laid down by the court in this case ; that the just and reasonable rule in such cases is, that the passenger must prepay his fare, and have his "ticket" showing the fact, or he must have the money in hand to pay it on the train with reasonable promptness when called for, or in the hands of another, so near to him as not to delay the conductor in collecting it.

It is true that a witness said on the trial, he would have paid the plaintiff's fare, if he had been called upon on the train in a rear car, but the conductor did not know this fact. It was not made known to him. The defendant did not say that the witness had promised to let him have the money, and the circumstances, as I have indicated, went strongly to show that he would not. The rule of law must be applied in the light of the facts as they appeared to the conductor, and the true rule is such as to secure justice to the passenger and the carrier alike, in view of the facts as they appeared at the time.

The conductor seems to have been abrupt, insolent, rather than arbitrary. We cannot see all that may have prompted his action. Impoliteness is not to be commended, but it cannot change the rule of law applicable here. Conductors ought to be reasonable, just, patient, polite to all, and gen-

tlemen under all circumstances; my observation is that they generally are so. If, sometimes they are not, it is to their discredit, in the estimation of good people, and to the injury of their employers.

PER CURIAM.                    ·          Judgment affirmed.