CASE 52—ACTION TO RECOVER DAMAGES FOR DEATH OF PLAINTIFF'S INTESTATE—MAY 2.

# L. & N. R. R. Co. v. Scott's Adm'r.

APPEAL FROM LINCOLN CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. AFFIRMED.

DUTY OF CARRIERS TO PERSONS WHO RIDE BY COURTESY OF CONDUCTORS AND WITHOUT PAYMENT OF FARE—SERVANTS RIDING FROM PLACE OF LABOR—ASSUMPTION OF RISKS—EVIDENCE—EXCESSIVE VERDICT.

Held: 1. One who rides on a passenger train, by courtesy of the conductor, without payment of fare, though in violation of a rule of the company, is entitled to the same care which is due to a passenger for hire.

2. A station agent riding to his home on a passenger train of his employer, by permission of the conductor, five hours after his labors of the day had ceased, was a passenger, and did not take the risks attending the operation of the train with the coach instead of the engine in front.

3. Where there was testimony tending to show that the derailment of a coach, causing the death of a passenger, was due to the operation of the train with the coach instead of the engine in front, it was admissible to prove by witnesses familiar with the operation of trains that it was more hazardous to operate the train in that way than with the engine in front.

4. A verdict for $9,000 for the death of a man thirty-two years of age, of good habits and good business ability, was not excessive.

J. W. ALCORN, ATTORNEY FOR APPELLANT.

E. W. HINES & BRECKINRIDGE & SHELBY OF COUNSEL.

1. One who takes passage on a train which he knows is always run backwards between the station where he got on, and the place of his destination, assumes the risks ordinarily incident to that manner of moving the train. The duty the carrier owes him is to exercise proper care in backing the train. Shearman & Red. on Negligence, 4 Ed., sec. 101; L. S. R. R. Co. v. Minogue, 90 Ky., 369.

2. An acting employe of a railroad company, while riding on one of its trains, without payment of fare, but solely by the consent

L. & N. R. R. Co. v. Scott's Adm'r.

of the conductor, and for his own business or pleasure is not a passenger or entitled to that degree of care which a carrier owes to a passenger. Pa. R. R. Co. v. Price, 96 Pa. St., 256; Bricker v. Phila. R. R. Co., 132 Pa. St., 1; R. R. Co. v. Moore, 49 Texas, 31; Prince v. Inter. R. R. Co., 21 A. & E. R. R. Cases, 154; L. & N. R. R. Co. v. Hailey, 94 Texas, 383, Toledo & W. Ry. Co. v. Brooks, 81 Ill., 245; C. & A. R. R. Co. v. Mich. 83 Ill., 247.

3. A verdict allowing $9,000 for the death of a man thirty-two years of age, unmarried, and who earns from $25 to $45 per month, is excessive. See also Todd v. Old Colony R. R. Co., 3 Allen, 18; Rose v. Railroad Co., 39 Iowa, 246.

E. W. HINES FOR APPELLANT.

1. The Court erred in refusing to permit the defendant to show the relation which decedent sustained to the railroad company. Kansas City & Ry. Co. v. Berry, (Kan.), 42 Am. St. Rep., 278.

2. The Court erred in refusing to permit the defendant to show that it was a violation of the rules of the company for persons to ride on the train without ticket or pass. McVeity v. St. Paul &c., R. Co., 45 Minn., 268, (S. C., 11 L. R. A., 174); Toledo &c., Ry. Co. v. Brooks, 81 Ill., 245; Virginia M. R. Co. v. Roach, 83 Va., 375; Ionnone v. New York &c., R. Co., 44 Atl. Rep., 592; Vick v. New York &c., R. Co., 95 N. Y., 267.

3. If decedent is to be regarded as a servant of the company, the question arises as to what risks he assumes? 3 Elliott on Railroads, 1289; Kuhns v. Wisconsin &c., R. Co., 70 Iowa, 561; Kennedy v. Penn. &c., R. Co., 17 Atl. Rep., 7; Ohio Valley Ry. Co. v. Watson's Adm'r, 93 Ky., 654; Higgins v. Cherokee R. R. Co., 73 Ga., 145.

W. G. WELCH FOR APPELLEE.

1. *The deceased was a passenger.* He was certainly not a trespasser, because he was riding on defendant's train admittedly on the invitation of the conductor, defendant's chief agent in charge of it. He was an employee of the road *actually engaged* at the time, at work for defendant

2. *There was no assumption of risk by decedent.* Being a passenger, he assumed no risk.

3. The verdict is not excessive. He was thirty-two years of age and had twenty-nine and one-half years expectancy, intelligent, educated and in good health. 107 Mass., 108; 74 Pa. St., 421; 3 Head, 638; Am. & Eng. Ency., 2 Ed., vols. 5, 207, 516, also 576, vols. 7, 413; Thompson on Carrier of Passengers, pages 44 and 49; L. & N. R. R. Co. v. Schuster, 10 L. R., 65; Favre v. L. & N.

R. R. Co., 91 Ky., 544; Downey v. Pence, 98 Ky, 261; L. & N. R. R. v. Mitchell, 87 Ky., 337-8; Am. & Eng. Ency., vol. 8, 318, note 1, also 618.

OPINION OF THE COURT BY JUDGE PAYNTER—AFFIRMING.

On June 16, 1896, by the accidental derailment, at Rowland, Ky., of a train of the appellant, B. F. Scott was killed. The train consisted of a combination car and passenger coach. The passenger coach had an apartment for ladies in one end, and the other end of which was a smoker. The other car was for baggage and for colored passengers. This train left Stanford at 4 o'clock p. m., passing through Rowland for Richmond, which returned at 9:10 p. m., and in five minutes thereafter left for Stanford, a mile distant from Rowland. It had reached a point about 250 yards from the depot, when it collided with a cow, which caused the derailment of the front coach, the train backing from Rowland to Stanford. Scott got on the train at Rowland, went to Richmond, returned on the train, remained on it at Rowland, and was on it when the accident occurred. About the time the train left the station, he was in the car next to the engine, and no one seems to have seen him leave it. After the accident he was discovered under the front bolster, near the center of the front car, the car next to the engine not being derailed. The evidence does not explain how he got out of the car, but the theory of the plaintiff is that when the cow was struck he ran to the front end of the car, and was thrown therefrom, as were the conductor and brakeman.

When the car started for Stanford, the conductor and a brakeman assumed their accustomed position on the front end of the car approaching Stanford, where there was an attachment which would enable them to operate

the air brake on the train, and there was also a small
whistle, which they used to give warning of the approach
of the train at crossings. They carried lanterns, which
cast a light not more than five feet in front of the train,
which seemed to have been of but little assistance in dis-
covering an object upon the track. There was no pilot on
the car, or headlight. Neither was the platform upon
which they stood surrounded entirely by railing, there
being openings which were not covered by the railing or
protected by chains. The train was running from six to
eight miles per hour at the time of the accident. The
collision derailed the front car, which ran to a point so
that the rear end of the derailed coach was 105 feet from
the point where the collision took place. Scott's sister
was the station agent at Rowland, but he performed the
duties of the position for her, she drawing the salary, and
paying it to him. He began his work at 6:30 a. m., and
ceased at about 4:30 p. m. In the discharge of his duties
as station agent he was not required to make the trip to
Richmond and return on this train. He lived at Stan-
ford.

On the trial of the case the conductor was asked in
what capacity Scott was traveling on the train, and he
answered "as passenger." The defense objected to this
and offered to prove by the witness that Scott did not
pay his fare; that he did not have a ticket or pass on the
road; that he was traveling by the courtesy and permis-
sion of the conductor; that the conductor was doing this
in violation of the rules of the company. The court re-
fused to permit this testimony to be offered, and proceed-
ed to try the case upon the theory that Scott was a pas-
senger on the train.

We will assume, for the purpose of this case, that these

facts, which were offered to be proven by the company, are true, and were proven. If these facts had been proven, it would not have deprived decedent of the character of passenger, for it is universally agreed that the payment of fare or price of carriage is not necessary to constitute one a passenger, or to give rise to a liability upon the part of the carrier. Hutch. Carr. sec. 565; Wood. R. R. (Minor's Ed.), p. 1214. Although the conductor may have been violating a rule of the company to carry the decedent without fare, still that fact could not deprive him of the character of passenger, or relieve the company of the duty imposed upon it as to passengers. In this case it was not proven, nor did it offer to prove, that the decedent tried to practice a fraud upon it to obtain passage on the train. The conductor was in charge of the train, and by courtesy and permission the decedent was carried, and was entitled to receive the care which the law imposes on a carrier of passengers. Thomp. Carr. Pass., p. 44, says: "The simple fact that an agent of the carrier violates his duty, and invites a person to ride free, without collusion on his part with the agent to defraud the carrier, will not operate so as to deprive him of his remedy as a passenger, if he is injured through carelessness of the carrier's agents." 2 Wood, R. R., p. 1207, says: "But where a person rides free at the invitation of an agent of the carrier, although the agent has violated his duty by inviting him, yet, if there is no collusion on his part with the agent to defraud the company, he is not deprived of his rights or remedies as a passenger as to injuries received through the negligence of the company." In Hutch. Carr., sec. 565, it is said: "It is universally agreed that the payment of the fare or the price of the carriage is not necessary to give rise to the liability. The carrier may demand

its prepayment, if he chooses to do so; but, if he permits the passenger to take his seat, or to enter his vehicle as a passenger, without such requirement, the obligation to pay will stand for the actual payment, for the purpose of giving effect to the contract, with all its obligations and duties." The adjudged cases of many of the courts of last resort of the country support Wood and Hutchinson on the proposition stated by them. In Wilson v. Railroad Co., 107 Mass., 110, the driver of a horse car invited a person to get on the car, and while thus traveling he was injured. The court said: "A master is bound by the acts of his servant in the course of his employment. They are deemed to be the act of the master. Ramsden v. Railroad Co., 104 Mass., 117, and cases cited. The driver of a horse car is an agent of the corporation having charge, in part, of the car. If, in violation of his instructions, he permits persons to ride without pay, he is guilty of a breach of his duty as a servant. Such act is not one outside of his duties, but is an act within the general scope of his agency, for which he is responsible to his master. In the case at bar, the invitation to the plaintiff to ride was an act within the general scope of the driver's employment, and, if she accepted it innocently, she was not a trespasser. It is immaterial that the driver was acting contrary to his instructions."

It is argued by counsel for appellant that, as the decedent was its employe, he did not sustain the relation of passenger, and that, being an employe, and riding upon the train, he took the risks attending the operation of the train. To perform the duties imposed upon his sister as station agent, it was not necessary for him to ride upon this train. His labors on the day of the accident had ceased five hours before it took place. The mere fact that the

injury took place between Rowland and Stanford, he being on his homeward journey, did not create the relationship of master and employe. He was not an employe on this train at any time. His services were distinct from that of operating the train. Some courts have held that, where an employe in another department of the service is permitted to ride on the train of his employer from his home to the place of his employment, or on his return from his employment to his home, the status of passenger does not exist, but he is regarded as being an employe taking such risks as employes in charge of the train would take. There is a sharp conflict in the opinions of the court on this question. If it be a correct rule, the facts of this case do not bring it within the rule. 2 Wood, R. R., p. 1217, criticises the correctness of the proposition, saying: "But, as to the last proposition, it does not seem to us that it has any foundation in principle as to employes who have not commenced their work for the day, or who are returning after the services of the day are completed. How the mere circumstance that a person is in the employ of the company in a department entirely distinct from the operation of the train, who is permitted to ride free upon the train to and from his work, can deprive him of the status of a passenger, is not readily seen. While going to and from his work, the relation of servant does not exist. He is merely on his way to take up his position as servant, or is returning after his duty as a servant has ceased, and there is no reason why he should not be treated as a passenger, as well as any other person who is riding free upon the train." We are of the opinion that the decedent was a passenger on the train, and the same duty was imposed upon the company to carry him safely, as in the case of other passengers.

This being true, he can not be held to have assumed the risks attending the operation of the train in the manner and under the circumstances in which this train was operated, the obligation being upon the company to use the utmost care and diligence to carry him safely. The duty was upon it to operate its train in such manner as would enable it to do this. If the manner of operating the train was not in the exercise of that high degree of care which a carrier of passengers is obligated by the law to exercise, it assumed the risk, and not the passenger, of traveling upon the train thus operated.

In defining the care that should have been exercised by the appellant, the court erred to the prejudice of the appellee. We do not think the court erred in admitting testimony tending to show that it was unsafe to operate the train with the coach in front, instead of the engine; nor did it err in admitting witnesses who were familiar with the operation of trains to testify that it was more hazardous to run a train in the manner in which this train was run than it would have been to have had the engine in front. The decedent was 32 years of age, a man of good habits, and good business ability, and we can not say that the verdict of $9,000 was excessive. The judgment is affirmed.

Petition for rehearing filed by appellant and overruled.