Gulf, Colorado and Santa Fe Railway Company v. W. A. Bunn.

Decided January 31, 1906.

1.—Damages—Passenger—Wrongful Ejection.

Evidence considered, in case of a passenger wrongfully put off train at a water tank, at night and in the rain, and incurring various hardships thereby, and held to support a recovery of $500 by plaintiff.

2.—Passenger—Trespasser—Offer to Pay Fare—Charge.

One entering a train to take passage, in good faith, though on a ticket not entitling him thereto, does not become a trespasser, and is entitled to be treated as a passenger until, being informed that the ticket is not good, he refuses to pay fare. Charges considered and held properly to submit these issues.

3.—Offer to Pay Fare—Evidence.

Plaintiff, being informed that his ticket was not good for transportation, said that he had no money, and was ordered to leave the train; he then said he could get the money but was told to get off, and did so; he had a friend on the train who would have loaned him the money. Held, that this testimony was sufficient to justify the submission to the jury of the question whether he offered to pay fare.

4.—Same—Offer to Pay Fare After Being Put Off.

Plaintiff, being required, for nonpayment of fare, to leave the train, which had stopped at a water tank and not for the purpose of ejecting him, having got off, told the conductor he would get the money on the train, if allowed to reenter the car, which was true, and was refused permission to reenter. Held, that he should have been allowed to do so, the case differing from that of one on whose failure to pay, the train has been stopped for the purpose of putting him off.

5.—Request for Instruction.

Where a charge does not contain positive error a request for a better instruction is necessary in order to entitle one to complain of the failure to make it definite and specific.

6.—Damages—Amount—Charge.

An instruction authorizing the jury, if they held plaintiff entitled to recover, to find damages "in any amount not to exceed $700," the limit claimed in the petition, was harmless to defendant where the verdict was for $500.

7.—Charge Requested.

There was no error in refusing a requested instruction which was on the weight of evidence, or upon an issue unsupported by evidence, or which ignored the element of willfulness in the refusal of a passenger to pay fare as justifying his ejection.

8.—Argument—Demeanor of Witness.

Arguments of counsel based on the evidence, appearance and demeanor of an adversary's witness are not illegitimate.

Appeal from the County Court of Bell County. Tried below before Hon. W. R. Butler.

The fifth assignment of error was upon the giving the following charge: "If you believe that plaintiff had been told that his ticket had expired, and was not good, and that he must pay his fare or get off the train, and that plaintiff then said he had no money with which to pay his fare, and that he would have to get off the train, and that he did

then, willingly and voluntarily, get off the train, then you will find for the defendant."

The seventh assignment was upon the refusal of the following requested instruction: "After a party has failed or refused, when called upon by the conductor for his ticket, either to present a valid ticket or to pay or offer to pay his fare, saying he did not have any money to pay his fare, the conductor is not legally bound to detain the train to give him time to try to get back on the train to try to borrow it."

The argument of counsel, objected to in the eleventh assignment, was that the demeanor, personal appearance and conduct as a witness of Campbell, the conductor, showed "that he is a man who is ready to believe that any person is trying to rob the Santa Fe Railroad, and beat his way, and that he would be ready to put him off without giving him a reasonable time to get the money to pay his fare."

*J. W. Terry* and *A. H. Culwell,* for appellant.—There is no proper basis in the evidence for the amount of this verdict. No physical injury was done to the plaintiff, and he was properly ejected from the train by the conductor. Gulf, C. & S. F. Ry. Co. v. Russell, 12 Texas Ct. Rep., 81, and authorities there cited.

The charge is erroneous, and not a correct presentation of the law of the case in this, that, if the plaintiff got on the train without proper transportation, and without the necessary amount of money to pay his fare, then he was not a passenger.

The charge is erroneous, and submits for the determination of the jury a material issue not raised by the evidence, in that there is no evidence that the plaintiff offered to pay the necessary cash fare.

*McMahon & Curtis,* for appellee.—The verdict and judgment for five hundred dollars is not excessive, but is a small compensation for the wrongs and injuries sustained. International & G. N. Ry. Co. v. Wilkes, 68 Texas, 621; Atchison, T. & S. F. Ry. Co. v. Cuniffe, 57 S. W. Rep., 692; Texas & P. Ry. Co. v. Lynch, 73 S. W. Rep., 65; Gulf, C. & S. F. Ry. Co. v. Wright, 10 Texas Civ. App., 183; Missouri, K. & T. Ry. Co. v. Chilton, 7 Texas Civ. App., 197.

If appellee boarded appellant's train at Lampasas in good faith, believing that his ticket was good for passage to Belton, then appellee was not a trespasser on appellant's train, and appellant owed him the duty to treat him as a passenger. Texas & Pac. Ry. Co. v. Bond, 62 Texas, 442; Louisville & N. R. R. Co. v. Garrett, 41 Am. Rep., 640.

The evidence clearly raised the question whether or not the plaintiff offered to pay the conductor the necessary cash fare, and whether or not the conductor refused to permit him to pay his fare. Clark v. Wilmington & W. R. R. Co., 91 N. C., 506, 49 Am. Rep., 647; Texas & Pac. Ry. Co. v. Bond, 62 Texas, 442.

When there has been no refusal to pay fare, but, instead, a request on the part of appellee for time to get the money to pay the same from a friend on the train, it was the duty of the conductor to have given him a reasonable time to get the money. Clark v. Wilmington & W. R. R. Co., 91 N. C., 506, 49 Am. Rep., 647; Texas & Pac. Ry. Co. v. Bond, 62 Texas, 442.

EIDSON, Associate Justice.—This is an action by appellee against appellant for damages in the sum of $700, alleged to have been sustained by him on account of his alleged unlawful expulsion from its train by appellant.

Appellant's first assignment of error complains of the verdict of the jury upon the ground that it is excessive. The verdict is for the sum of $500. Appellee testified as follows:

"The conductor put me off the train at the water tank, and would not let me get on the train. There were several people in the car. The car was crowded. The conductor spoke to me in a gruff way, as I have stated, in the presence and hearing of the people in the car. It humiliated and mortified me in my feelings to be talked to and put off the car and treated as the conductor treated me. It was about eleven or twelve o'clock at night when the conductor put me off the train, and the place where he put me off was a very lonely place, in the woods on the Lampasas River, about ten miles from Lampasas and about two miles from the town of Kempner. The nearest place where there was a house and depot that I knew of was Kempner. . When the conductor put me off the train I asked him to take me to Kempner, but he refused to let me ride to Kempner. I had a heavy grip with me at the time, and the night was dark and cloudy, and was raining, and it was tolerably cool. I had to walk to Kempner through the cold and rain and carry my grip. Lampasas River was between where I was put off and Kempner, and I had to cross the railroad bridge over the Lampasas River—the only place near where I was put off where I could cross the river. The bridge was a tolerably long bridge. It had openings in it with iron rails laid on ties. It was so dark that I could not see, and had to feel my way over the bridge. When I crossed the bridge I went to Kempner, and when I reached Kempner the depot was closed, and I could see no lights in the town of Kempner. I had to sleep on a hard board or plank bench. Next morning I inquired if there was an operator there from a man, and he told me that there was not. I had to walk and carry my grip to Coperas Cove in order to wire for a ticket to Belton. It is about nine or ten miles from Kempner to Coperas Cove, and I walked and carried my grip that distance. . . . I suffered from the cold and exposure in walking and carrying my grip through the cold and rain and darkness, and having to lay out all night at Kempner, and was mortified and humiliated in my feelings by being treated in that way."

We are not prepared to say that the jury were not authorized by this testimony to find damages in favor of the appellee in the amount of the verdict. The amount of the damages to which appellee was entitled was a matter for the determination of the jury from all the circumstances adduced in evidence, and the amount found is not, in itself, so grossly disproportionate to the injuries suffered by appellee, as shown by the evidence, as to manifest that the verdict was the result of passion or prejudice.

Appellant's second assignment of error complains of the first section of the main charge of the court, which, in effect, instructs the jury that, if appellee entered appellant's train, having a ticket he believed to be good and entitling him to ride on said train, he would not be a tres-

passer on said train, and appellant owed him the duty to treat him as a passenger. This charge is correct, especially insofar as it tells the jury that appellee, under the circumstances stated, would not be a trespasser; and that part which informs them that, under said circumstances, appellant owed appellee the duty to treat him as a passenger, was not error, in view of that part of the charge which tells them that if, after appellee was notified that his ticket was not good, and did not entitle him to ride on appellant's train, he refused to pay his fare, he became a trespasser, and appellant would be authorized to eject him from the train. The charge complained of, when thus construed, could have been understood by the jury only as instructing them that appellee would be entitled to be treated as a passenger until he was notified that his ticket was not good and refused to pay his fare. (Texas & Pac. Ry. Co. v. Bond, 62 Texas, 442; International & G. N. Railway v. Wilkes, 68 Texas, 619; Clark v. Wilmington & W. R. R. Co., 91 N. C., 506, 49 Am. Rep., 647; Louisville & N. Ry. Co. v. Garrett, 41 Am. Rep., 640; 28 Am. & Eng. Ency. Law, 168.)

Appellant's third assignment of error complains of the second section of the main charge of the court to the jury in submitting the issues as to whether appellee offered to pay the necessary cash fare, and the conductor of the train refused to accept the same, upon the ground that there was no evidence raising such issues. We have had some difficulty in arriving at the conclusion that the part of the charge complained of is authorized by the evidence. It is not contended by appellee that he made an actual tender of the cash fare to the conductor, nor does the court, by its charge under consideration, submit to the jury the issue of an actual tender, but simply an offer to pay cash fare.

Appellee testified that Jim Scott gave him a ticket to Belton, and asked him if he wanted any money, and he told him that he did not, as he had a ticket he would not need it, but would draw the money for his time when he got to Belton; that he thought the ticket given him by Scott was a good ticket and would entitle him to travel on the train from Lampasas to Belton; that he and Scott boarded the train at Lampasas together, intending to go to Belton; that when the train got near the water station, near Lampasas River, the conductor came into the car where he was and called for his ticket; that he gave him his ticket and the conductor stated that it was not good; that he, appellee, said he reckoned not. The conductor replied that it was not good—"it was out;" and appellee then stated to the conductor that if his ticket was not good he would have to get off or get the money, and that he had no money. The conductor said that appellee would have to get off, in a stern and commanding way, and he, appellee, told the conductor that he could get the money to pay his fare, and the conductor told him that he would have to get off, and that he, in pursuance to that command, got off. Appellee further testified, in substance, that Scott had the money, and would have loaned it to him, and that he would have borrowed the money from him to pay his fare.

Scott testified, in substance, that he was on the train at the time with appellee, and had sufficient money to pay his fare to Belton, and that he would have willingly let him have the same.

This testimony tends to show an offer by appellee to the conductor

to pay his fare, in that he told the latter that he could get the money to pay his fare; and the testimony shows that Scott was in the same car with appellee, and had the money, and was willing to let appellee have it; but the conductor told appellee, in reply to this offer, that he would have to get off, in effect, refusing to accept the money or cash fare. In other words, the language of the conductor was equivalent to saying he would accept nothing but a valid ticket; and appellee, having no such ticket, must get off. The authorities hold that a passenger is entitled to reasonable time within which to produce his ticket or pay cash fare, and that a reasonable time should be given a passenger to obtain the money with which to pay the fare from some other person on the train, even in another car. (28 Am. & Eng. Ency. Law, 168.) In our opinion, appellee's acts and conduct, and those of the conductor, should have the same construction placed on them as if appellee had had, at the time, the money in his pocket with which to pay his fare, and so told the conductor; and the conductor, notwithstanding that fact, told him he must get off. In the absence of testimony to the contrary, we must construe the statement of appellee—that he could get the money to pay his fare—to mean that he was also willing to pay it.

Appellant's fourth assignment of error complains of the following paragraph of the court's charge: "Or if you believe from the evidence that the ticket of plaintiff was not good, and when so told by the conductor, and that he would have to pay his fare or get off, he, the plaintiff, got off the train without making any effort to get the money or pay his fare, and that after he had gotten off the train, and before the train had started, he told the conductor that he could get the money, if he would allow him to get back on the train, and if you believe that he could and would have done so, but that the conductor refused to allow him to reenter the train and pay his fare, if you so believe, you will find for the plaintiff." Appellant's contention under this assignment being that, after appellee had been ejected because of the non-production of a proper ticket or the payment of cash fare, the conductor was not required to permit him to get back on the train, but was authorized to refuse to allow him to reenter the train. There is no testimony showing that the train was stopped for the purpose of ejecting appellee, but it shows that the train was stopped, as usual, at the water tank. This charge is intended to apply to that phase of the evidence which tends to show that appellee voluntarily got off the train without making any effort to get the money or pay his fare, and after the train had stopped at the tank, and before it started again, made the request of the conductor to allow him to reenter the train and get the money and pay his fare, which was refused. If it be true that the train had stopped, not for the purpose of ejecting appellee therefrom, but for another purpose, and appellee got off the train while it was so stopped, and after doing so he, before the train started, requested the conductor to permit him to reenter the train in order to get the money with which to pay his fare, and if he had been given a reasonable time within which to do so, he would have procured the money and paid his fare, such refusal of the conductor would render the defendant liable to the plaintiff for such damages as accrued to him by reason of such refusal.

We are further of the opinion that there is no error in the paragraph of the charge complained of, especially when construed in connection with that paragraph of the charge which instructs the jury, in effect, that if they believe from the evidence that, when appellee was told that his ticket was not valid, he made no offer to pay his fare, or request for time to get the money with which to pay same, he became a trespasser, and defendant had the right to eject him from the train.

Appellant's fifth assignment of error is overruled. The paragraph of the court's charge complained of in this assignment contains no positive error, and, if appellant desired it to be made more definite or specific, it should have requested a proper charge with this view.

Appellant's sixth assignment of error complains of that part of the main charge of the court to the jury which instructs them to the effect that, if they find in appellee's favor, they were authorized to find damages in any amount not to exceed $700, this being the amount claimed in appellee's petition. The verdict of the jury was for $500, which clearly manifests that they were not misled by the charge complained of.

We overrule appellant's seventh assignment of error. There was no error in the refusal of the court to give the special charge of appellant, which refusal is complained of in this assignment. Said special charge is upon the weight of the testimony, and does not embody a correct principle of law, in that it ignores the question as to whether or not the failure or refusal of appellee to present a valid ticket, or to pay or offer to pay his fare, was wilful; and, further, there was no evidence to support that part of said special charge relating to the conductor's detaining the train to give appellee time to get back on same to try to borrow the money with which to pay his fare.

Appellant's eighth, ninth and tenth assignments of error are without merit, and are overruled.

Appellant's eleventh assignment of error complains of the action of the court in permitting counsel for appellee to make certain remarks to the jury in his argument before them. We are of the opinion that the remarks complained of were authorized by the evidence, and were within the bounds of legitimate comment upon the testimony of the witness referred to in the remarks.

There being no reversible error pointed out in the record, the judgment of the court below is affirmed.

*Affirmed.*