## CHESAPEAKE & O. RY. CO. v. BURTON.
### No. 3361.

Circuit Court of Appeals, Fourth Circuit.
Nov. 28, 1932.

John E. F. Wood, of Huntington, W. Va. (Fitzpatrick, Brown & Davis and Douglas W. Brown, all of Huntington, W. Va., on the brief), for appellant.

A. A. Lilly, of Charleston, W. Va. (Lilly & Lilly, of Charleston, W. Va., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is an action of trespass on the case, to recover damages for personal injuries, brought by Samuel T. Burton, appellee, against the Chesapeake & Ohio Railway Company, appellant, in the circuit court of Cabell county, Huntington, W. Va. Having been removed to the District Court of the United States for the Southern District of West Virginia, the case was first tried in that court in October, 1930, and resulted in a verdict and judgment in favor of the plaintiff. On appeal that judgment was reversed by this court. Chesapeake & Ohio Railway Co. v. Burton, 50 F.(2d) 730 (1931).

At the second trial in the District Court the jury was unable to agree. The case was consequently tried a third time on March 18, 1932, and at that trial there was a verdict for the plaintiff in the sum of $12,000. This

appeal is taken from the judgment upon that verdict.

The facts were stated in the former opinion of this court, and virtually the only new testimony given at the trial now under consideration was with respect to the condition of the platform where the accident occurred and the length of time the hoop, that it was claimed caused the accident, had been on the platform.

█ The principal defenses relied upon on this appeal are: First, that the plaintiff was not a passenger or invitee on the premises of the defendant, so that no duty of care was owed to him; and, second, that there was no evidence of negligence on the part of the defendant.

It is admitted that the appellee, who will be hereinafter referred to as the plaintiff, presented a ticket for which he had paid the full price, but which was not used by him on the day of purchase. The ticket showed on its face that it was good for a continuous passage "commencing not later than one' day after date of sale." The date of sale was stamped on the back of the ticket and the time limit had expired before it was presented to the conductor of the train; but the conductor, who was in charge of the train, accepted the ticket without question, and permitted the plaintiff to ride as a passenger. It is also admitted that the ticket was redeemable at the full price paid for it, and was worth that amount to the plaintiff and to the railway company when surrendered. The railway company had received cash equivalent to the fare charged for the journey made by the plaintiff, who testified that he had not used the ticket at the time of purchase because he had an opportunity to ride to his destination with a friend in an automobile. Plaintiff also testified that had the train conductor refused the ticket he would have paid his fare, and had the money to pay it, and that he presented the ticket in good faith believing it to be valid. Plaintiff had worked for the defendant company as a train conductor and had handled passengers, but testified that as a conductor he did not know that this form of ticket was not valid because of the expiration of the time limit. There was testimony, on the other hand, that the plaintiff knew that the ticket was out of date when he presented it to the conductor. Plaintiff lost his hand as a result of the accident.

On the first point as to whether the plaintiff was a passenger or invitee on the train and as such the railway company owed him a duty of care, we are of the opinion that he was such passenger or invitee.

█ The conductor was the agent or representative of the carrier in charge of the train upon which the plaintiff rode, and it was his duty to pass on such a question as arose when the passenger presented the ticket. The conductor testified that he did not notice the sale date stamped on the back of the ticket, although it was his duty, and one of his principal duties, to examine a ticket presented by a passenger. The conductor is chargeable not only with what knowledge he actually had, but with such knowledge as he could have easily obtained by a simple examination which it was his duty to make. He accepted the ticket from the passenger and, in the absence of any illegality, or bad faith, deceit, or fraud on the part of the passenger, his act bound his principal, the railway company. Here there could be, under the evidence, no question of fraud or deceit on the part of the plaintiff. The plaintiff surrendered and the defendant received a full equivalent of the fare owing to the fact that the ticket was redeemable at its full value. The plaintiff testified he did not know that the ticket was not good for the fare. The conduct of the conductor in accepting the ticket amounted to a waiver of its defect. He was the agent of the railway company, appointed for the very purpose of collecting the tickets and examining them in order to ascertain whether they were valid. He collected the ticket on the occasion in question, and so far as anything in the record discloses, there was nothing in his conduct at the time to indicate that he did not notice that the ticket had expired and did not knowingly waive the defect. The passenger, under these circumstances, was warranted in concluding that the ticket had been knowingly accepted and that the relationship of carrier and passenger existed. There was testimony, it is true, on the part of the conductor that he did not notice the defect; but under the circumstances described, his conduct was binding on the railroad, and it may not escape responsibility to the plaintiff who was led to suppose that his offer to ride upon the train as a passenger had been accepted by the railroad representative. Robostelli v. N. Y., N. H. & H. R. Co. (C. C.) 33° F. 796; Erie R. Co. v. Littell (C. C. A.) 128 F. 546; Simmons v. Oregon R. Co., 41 Or. 151, 69 P. 440, 1022; St. Louis & S. F. R. Co. v. Kilpatrick, 67 Ark. 47, 54 S. W. 971; Gulf, C. & F. R. Co. v. Bunn, 41 Tex. Civ. App. 503, 95 S. W. 640; Louisville & N. R. Co. v. Garrett, 8 Lea (Tenn.) 438, 41 Am. Rep.

640; Clark v. Wilmington, etc., R. Co., 91 N. C. 506, 49 Am. Rep. 647; Texas & Pacific R. Co. v. Bond, 62 Tex. 442, 50 Am. Rep. 532; St. Louis, etc., R. v. Fussell (Tex. Civ. App.) 97 S. W. 332; Lugner v. Milwaukee Elec. Ry. Co., 146 Wis. 175, 131 N. W. 342; Central of Ga. R. Co. v. Bagley, 173 Ala. 611, 55 So. 894; Whittington v. Philadelphia, B. & W. R. Co., 5 Boyce (28 Del.) 351, 93 A. 563; Chudnovski v. Eckels, 232 Ill. 312, 83 N. E. 846; Chicago, St. L. & N. O. R. Co. v. Benedict's Adm'r, 154 Ky. 675, 159 S. W. 526; Chesapeake & O. R. Co. v. Smith, 162 Ky. 747, 172 S. W. 1088; Pere Marquette R. Co. v. Strange, 171 Ind. 160, 84 N. E. 819, 85 N. E. 1026, 20 L. R. A. (N. S.) 1041; Barnett v. Minneapolis & St. L. R. Co., 123 Minn. 153, 143 N. W. 263; Louisville & N. R. Co. v. Blair, 104 Tenn. 212, 55 S. W. 154; Fitzgibbon v. Chicago & N. W. R. Co., 119 Iowa, 261, 93 N. W. 276; Louisville & N. R. Co. v. Scott's Adm'r, 108 Ky. 392, 56 S. W. 674, 50 L. R. A. 381; Mangum v. N. & W. R. Co., 125 Va. 244, 99 S. E. 686, 5 A. L. R. 346; 3 Thomp. Neg. (2d Ed.) pages 88, 89; Weber v. Chicago, R. I. & P. R. Co., 175 Iowa, 358, 151 N. W. 852, L. R. A. 1918A, 626; Berkebile v. Johnstown Traction Co., 255 Pa. 310, 99 A. 871; Chicago, R. I. & P. R. Co. v. Warren, 132 Okl. 107, 269 P. 368; Moore on Carriers (2d Ed.) Vol. II, p. 954; Chicago, R. I. & P. R. Co. v. Burns (Tex. Civ. App.) 104 S. W. 1081; Hutchinson on Carriers (3rd Ed.) Vol. II, p. 1209; 10 C. J. 708.

A large number of decisions have been cited to support the position that the plaintiff was not a passenger,[1] but an examination shows that they deal either with cases where the ticket was refused by the conductor of the train and the passenger refused to pay the fare demanded, or with cases where no consideration was paid by the passenger or received by the carrier, and there was

[1] Farley v. Cincinnati, H. & D. R. Co. (C. C. A.) 108 F. 14; Grogan v. Chesapeake & O. R. Co., 39 W. Va. 415, 19 S. E. 563; Boylan v. Hot Springs R. Co., 132 U. S. 146, 10 S. Ct. 50, 33 L. Ed. 290; Freeman v. Atchison, T. & S. F. Ry. Co., 71 Kan. 327, 80 P. 592, 6 Ann. Cas. 118; Harmon v. Jonsen (C. C. A.) 176 F. 519, 20 Ann. Cas. 1224; Condran v. Chicago, M. & St. P. R. Co. (C. C. A.) 67 F. 522, 28 L. R. A. 749; Fitzmaurice v. New York, N. H. & H. R. Co., 192 Mass. 159, 78 N. E. 418, 6 L. R. A. (N. S.) 1146, 116 Am. St. Rep. 236, 7 Ann. Cas. 586; Toledo, W. & W. R. Co. v. Beggs, 85 Ill. 80, 28 Am. Rep. 613; Baltimore & O. S. W. R. Co. v. Evans, 169 Ind. 410, 82 N. E. 773; Dangerfield v. Atchison, T. & S. F. R. Co., 62 Kan. 85, 61 P. 405; Louisville & N. R. Co. v. Maxwell, 237 U. S. 94, 35 S. Ct. 494, 59 L. Ed. 853, L. R. A. 1915E, 665; Wholesale Coal Co. v. Chesapeake & O. R. Co., 106 W. Va. 53, 144 S. E. 715; Virginia Ry. & Power Co. v. Dressler, 132 Va. 342, 111 S. E. 243, 22 A. L. R. 301.

some act of fraud. We do not consider any of these authorities controlling here.

On the question of illegality it is urged on behalf of the railway company that the law of West Virginia made it unlawful for the conductor to accept the ticket. Sections 6 and 7, chapter 9, of the Acts of Legislature of West Virginia 1913, read as follows:

"Sec. 6. *Special rates; rebates.* No public service corporation subject to the provisions of this act shall, directly or indirectly, by any special rate, rebate, drawback or other device or method, charge, demand, collect, or receive from any person, firm or corporation, a greater or less compensation for any service rendered or to be rendered, than it charges, demands, collects or receives from any other person, firm or corporation for doing a like and contemporaneous service under the same or substantially similar circumstances and conditions."

"Sec. 7. *Preferences.* It shall be unlawful for any public service corporation subject to the provisions of this act to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation or locality, or any particular character of traffic or service, in any respect whatsoever, or to subject any particular person, firm, corporation, company or locality, or any particular character of traffic or service, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever."

We do not think the statute applies for the reason that here, by the acceptance of a ticket worth the fare fixed, no undue or unreasonable preference or advantage was given the plaintiff. It was clearly not the intention of the Legislature of West Virginia in passing the act to make unlawful an act such as was done here.

In Southern Pacific Co. v. Schuyler, 227 U. S. 602, 33 S. Ct. 277, 281, 57 L. Ed. 662, 43 L. R. A. (N. S.) 901, a similar question involving the use of a pass in violation of the Hepburn Act (34 Stat. 584) was passed on. Mr. Justice Pitney said: "Neither the letter nor the spirit of the act makes an outlaw of him who violates its prohibition by either giving or accepting gratuitous interstate carriage. The deceased no more forfeited his life, limb, or safety, and no more forfeited his right to the protection accorded by the local law to a passenger in his situation, than the carrier forfeited its right of

property in the mail car upon which the deceased rode. His right to safe carriage was not derived, according to the law of Utah, from the contract made between him and the carrier, and therefore was not deduced from the supposed violation of the Hepburn act. It arose from the fact that he was a human being, of whose safety the plaintiff in error had undertaken the charge. With its consent he had placed his life in its keeping, and the local law thereupon imposed a duty upon the carrier, irrespective of the contract of carriage. The Hepburn act does not deprive one who accepts gratuitous carriage, under such circumstances, of the benefit and protection of the law of the state in this regard."

As to the question of the negligence of the railway company, that point was fully discussed in the former opinion of this court in Chesapeake & O. R. Co. v. Burton, supra. At the last trial testimony was given to the effect that the hoop in question had been allowed to remain on the platform of the railway company such a length of time that the agents of the carrier knew, or by the exercise of ordinary care could have known, of its being there. This additional evidence was sufficient to take the case to the jury on that point.

There was no reversible error in the charge of the learned judge below to the jury, and the judgment is, accordingly, affirmed.