---
Railroad *v.* Klyman.

---

RAILROAD    *v.*    KLYMAN.

(*Nashville.*    February  8,    1902.)

1. COMMON CARRIER.    *Passenger's rights under full rate ticket defined.*

The holder of a first class, regular, full rate ticket from one point to another on the lines of a single carrier has ordinarily the right to begin his journey when he pleases; but when he has commenced his journey he cannot stop over at an intermediate station, but must, in the absence of statute, regulation, or contract permitting stop-over, continue it to his destination, without break, by the ordinary trains with reasonable dispatch. His failure to do so forfeits his right to travel on the ticket.    (*Post, pp. 307-314.*)

Case cited: Railroad *v.* Turner, 100 Tenn., 214.

2. SAME.    *Same.*

And where a passenger attempting to travel on such a ticket has been refused transportation and sues the carrier for damages on that account, it is not precluded from setting up the invalidity of the ticket in defense of the action by the fact that the conductor, in refusing the transportation, stated as his reason that the ticket was out of date, whether the reason assigned was technically correct or not.    (*Post, pp, 314, 315.*)

Case cited : Ault *v.* Dustin, 100 Tenn., 366.

---
FROM    DAVIDSON.

---

Appeal  in  error  from  the  Circuit  Court  of Davidson  County..  JOHN  W.  CHILDRESS,  J.

Railroad *v.* Klyman.

Smith & Maddin for Railroad.

Washington, Allen & Rains and James A. Ryan for Klyman.

Caldwell, J.    The line of the Henderson Division of the Louisville & Nashville Railroad Company, running north and south, crosses the line of its Memphis Division, which runs east and west, at Guthrie, Kentucky.    Russellville, Ky., is on the former line east of the intersection, and Nashville, Tenn., is on the latter line south of the intersection.

Passengers going from one of these points to the other must change cars, and have some delay at Guthrie, the place of intersection.

August 10, 1898, the plaintiff, Solomon Klyman, took passage at Russellville for Nashville, and while awaiting the Nashville bound train at Guthrie, he received a message calling him in the opposite direction to Madisonville, Ky., whence he went to Louisville, Ky., and thence to Russellville, and on to Guthrie again by the same route as before.    After this, on August 29, of same year, he boarded the train at Guthrie and resumed his journey to Nashville.    The conductor challenged his ticket, and, upon his refusal to pay fare, stopped the train and was in the act of forcibly ejecting him, when a fellow passenger 'paid his fare for him and he was carried safely to his destination.    A few moments after his fare

24 p—20

was paid, he exhibited a large amount of money,
and repaid the gentleman who had kindly ad-
vanced the fare for him.

This suit was brought to recover damages for
the attempted ejection; verdict and judgment were
rendered for $150.00 in the plaintiff's favor, and
the defendant appealed in error.

The rejected ticket was issued nineteen days
before presentation. It was a first-class, regular,
full-rate ticket, calling for Nashville as the
point of destination. It was lost before the trial,
and the witnesses, while agreeing as to the facts
just stated, were not in harmony as to the
*place* of issuance.

The plaintiff testified that he bought a ticket
from Russellville to Guthrie, and used it, and
that while waiting at Guthrie, and before called
to Madisonville, he bought the ticket now in
question from Guthrie to Nashville, and kept it
in his pocket until presented nineteen days later,
but the defendant's witnesses testified that it was
issued at Russellville, and used and punched to
Guthrie on the day of issuance.

The plaintiff contended below, and contends here,
that the ticket, being first-class, regular, and full
rate, was good for passage when presented, whether
issued at the one place or the other; while the
defendant denied there, and denies here, that it
was then good if issued at Russellville and not

presented on next train to Nashville, after being used to Guthrie.

The trial Judge took the plaintiff's view and charged the jury as follows:

"That if the plaintiff purchased a ticket at Guthrie for Nashville, and paid full fare for it, or if he purchased it at Russellville, for Nashville, *via* Guthrie, as the road ran, at the full fare, that he was entitled to transportation from Russellville, or from Guthrie, to Nashville upon the same, no matter when presented, and if the defendant company, through its conductor, refused to accept the same for passage from Guthrie to Nashville, when offered and presented by plaintiff, and the conductor thereupon proceeded to eject, or attempted to eject, the plaintiff from the train, such action on his part was contrary to law, and that defendant would be liable for such."

This instruction, when applied, as it must be, to the facts and contentions heretofore recited, is erroneous in its alternative supposition. The ticket was not good for transportation to Nashville when presented, if issued in ordinary form at Russellville and used to Guthrie nineteen days previously.

Such a ticket, if issued, was good only for a continuous passage from Russellville to Nashville by such connection as was made by the company's trains at Guthrie, and the plaintiff, having elected, if he did, to begin his journey on the

day of issuance, was legally bound to finish it by the first suitable train from Guthrie after his arrival there. The contract indicated by such a ticket was, in the absence of an agreement to the contrary, an entirety; and when performance was once commenced, both passenger and carrier were legally obliged to continue it until completed.

The contract operated on both alike. It gave the passenger no more power to break his journey into parts against the company's will, than it gave the company to do the same thing against his will.

It gave neither the right of severance and piecemeal performance, without the consent of the other; and no consent is shown or claimed.

The purchase of a full rate, through ticket from Russellville to Nashville, if made by the plaintiff, entitled him, under the authority of *Railroad* v. *Turner,* 100 Tenn., 214, to elect when he would begin his journey, but it did not entitle him, under that or any other authority, of which we are aware, to subdivide his journey at will, or when started, to go otherwise than continuously from initial point to ultimate destination.

The law implies the right of an election between times for embarkation from the very sale of such a ticket, and it likewise, for a similar reason, implies the duty of continuous passage

Railroad *v.* Klyman.

from the very fact of its commencement. As the sale of such a ticket, nothing else being said, affords an inference that the purchaser may start when he pleases; so his starting, without an agreement to the contrary, affords an inference that he will go directly to the end of his journey.

The company must receive him upon its regular train whenever he sees fit to start, and, having started, he must make a continuous passage, no agreement to the contrary having been made in either instance.

These rights and duties lie at the foundation of the contract, and are reciprocal.

Only a few of the many authorities upon the subject will be cited.

"The performance of the contract for carriage evidenced by the ticket, it has been held, must be demanded by its holder as an entirety when there is no express agreement upon the subject on the ticket or with the agent of the company, with competent authority to make it. If, therefore, by its terms, the ticket is for passage from one point to another, when the journey has been once commenced it must be continued without intermission until the destination named in the ticket has been reached, and the passenger cannot claim the right to stop at any intermediate place and continue his trip upon a subsequent train of the same company, with the same ticket, unless the

carrier has failed to carry him with that reasonable dispatch which he had the right to demand." Hutchinson on Carriers (2d ed.), Sec. 575, p. 658.

"As a general rule, one who purchases a through ticket, is bound to pursue the usual and direct route over the company's road, and is not entitled to go by way of a longer and more circuitous line owned by the same company, *nor is he entitled to stop over on the way unless given that privilege.*" 4 Elliott R. R., Sec. 1595, p. 2885.

"A passenger having used a through ticket to an intermediate station, has no right on such ticket to resume his journey." Ray on Passenger Carrier, p. 520.

These authors are supported by the adjudged cases which they cite, and others.

In *Wyman* v. *Northern Pacific R. R. Co.* (34 Minn., 310), 22 Am. & Eng. R. R. Cases, 403, 404, the Court said:

"The general rule, in the absence of any statute changing it, is that the contract of conveyance between a carrier and a passenger is an entirety. Neither party can require the other to perform it in parts. Where a passenger has selected his train and entered it, and commenced his journey, he has no right to leave it at an intermediate point without the carrier's consent,

and afterward demand the contract be completed on another train."

One of the head notes to the case of *Hatten v: Railroad Co.* (39 Ohio St., 315), as reported in 13 Am. & Eng. R. R. Cases, 53, is as follows:

"In the absence of any agreement, rule, or regulation to the contrary, the obligation created by the sale of the ticket was for one continuous passage, and if the passenger voluntarily left the train · at an intermediate station, while the carrier was engaged in the performance of the contract, he thereby released it from further performance, and had no right to demand such performance on another train or at another time."

The rule, with the reason for it, is stated in another case in these words, viz.:

"The contract between the parties is, that upon the payment of fare, the company undertakes to carry the passenger to the point named, and he is furnished with the ticket as evidence that he has paid the required fare, and is entitled to be carried to the place named.

"When the passenger has once elected the train on which he is to be transported, and entered upon his journey, he has no right, unless the contract has been modified by competent authority, to leave the train at a way station, and then take another train on which to complete his journey, but is bound by the contract to proceed

directly to the place to which the contract entitled him to be taken.

"Having once made his election of the train and entered upon the journey, he cannot leave that train, while it is (operated) in a reasonable manner within the undertaking of the carrier, and enter another train, without violating the contract he has entered into with the company." *McClure v. P., W. & B. Railroad Co.* (34 Md., 532), 6 Am. R., 347.

Adjudications to the same effect could be multiplied at great length, but that is not necessary.

Many of the other cases are collected in a foot note to *Walker* v. *Wabash, etc., R. Co.,* 16 Am. & Eng. R. R. Cases, 386.

It is due to say that we are not dealing, in this case, with a coupon ticket, in respect of which, as a whole, the rule is different, allowing, as it does, as many breaches in the journey, or as many stop-overs as there are coupons.

Of such a ticket each coupon is said to stand as a separate ticket between its own initial and ultimate points, and passage upon any particular coupon, when begun, is required to continue to its end, unless otherwise agreed.

The authorities upon the use of the coupon ticket illustrate and re-inforce the doctrine herein applied to the case in hand.

Hutchinson on Carriers, Sec. 577, says:

"A well recognized distinction exists, however,

between the ordinary ticket of the carrier, which binds it to carry from point to point upon its own road, and tickets which entitle the holder not only to passage over the line of the company issuing them, but also over other connecting lines over which it is necessary for him to pass in order to reach his destination, and which are issued in what is called the coupon form, and are denominated coupon tickets.

"When the carriage contemplated is confined to the line which issues the ticket, it is a contract solely with that line to carry the holder according to its terms, and when the transportation is once begun, both parties are held to a continuous performance until it is completed, unless otherwise agreed."

Another learned author employs this language, namely: "As we shall see, a through ticket over several lines does not require the passenger to make a continuous trip over all such lines without stopping, but it does usually require him, after he has commenced his journey on any one of them, to complete it as far as he is going upon that particular line. So, an ordinary ticket over one line is for a continuous trip, and if the passenger voluntarily leaves the train upon which he has commenced it, at an intermediate point, he cannot resume it by virtue of such ticket, contrary to the rules of the company, on another train, or at another time." 4 Elliott R.

R., Sec. 1595, p. 2491. See, also, Sec. 1596. same book, and *Averback* v. *N. Y. Cen. & H. R.*, 89 N. Y., 281.

But the plaintiff contends, further, that the railway company was in no aspect of the case entitled to the benefit of the continuous passage doctrine, because the conductor, upon declining the ticket, said that he did so upon the ground that it was *out of date,* and thereby estopped the defendant from justifying its rejection on any other ground; and to sustain this contention, *Railway Co.* v. *McCarthey* is cited. In that case the carrier, after proving that it was unable to keep its contract to forward cattle on Sunday, for want of cars, was not allowed to change the grounds for the breach and say the law forbade the shipment on the Sabbath. The Court, in the opinion, said: "Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground and put his conduct upon another and different consideration. He is not permitted thus to mend his hold. He is estopped from doing it by a settled principle of law." 96 U. S., 267, 268.

That principle, however, was held in *Ault* v. *Dustin,* 100 Tenn., 366, not to preclude a person, who had first insisted that his contract had been cancelled, from defending a suit upon the

ground that the other party had breached the contract.

*A fortiori* does it not stand in the way of the interposition of the continuous passage doctrine in the present case. On the defendant's theory of the facts, the ticket had become invalid for any and every purpose, and, that being true, no particular legal importance should be attached to the reason assigned by the conductor for its rejection. If the ticket was invalid, it can make no difference that a wrong reason, as plaintiff contends, was assigned for its invalidity. Whatever the reason given, the fact of invalidity and the plaintiff's lack of right to proceed remain the same.

In reality, however, the reason actually assigned embraces ·the present insistence of the defendant. If, in fact, the ticket was purchased at Russellville, for Nashville, and used to Guthrie on the 10th of August, it was *out of date* when offered for passage from Guthrie to Nashville on the 29th of the same month, and that was a good and sufficient legal reason for rejecting it.

Reverse and remand.