*C. A. Thatcher* and *W. B. Starbird,* for Swart, administratrix.

---

## RAILWAY TICKETS GOOD FOR CONTINUOUS PASSAGE.

[Circuit Court of Crawford County.]

HENRY ELLSWORTH v. THE PENNSYLVANIA COMPANY.

Decided, February 5, 1904.

*Contract—As Embodied in a Railway Ticket—Good for a Continuous Passage—But the Train Stopped Midway in the Journey, and the Passenger Was Ejected from a Train—Failure of Defendant's Servants to Give Instructions to Passenger.*

Where a railway passenger, holding a ticket "good for continuous passage to destination," is interrupted in his journey by the train reaching the end of its run, and no information is given him either by the agent who sold him the ticket or the conductor with whom he has been traveling, as to when or upon what train he can continue his journey, and he ignorantly allows one train to pass and resumes his journey on the second train, the conductor of which refuses to accept his ticket and ejects him therefrom, there are facts presented which should be given to the jury under proper instructions as to the contract and the law.

NORRIS, J.; DAY, J., concurs; MOONEY, J., dissents.

Error to the common pleas.

On the 28th of March, 1899, Henry Ellsworth, plaintiff in error and plaintiff below, bought a ticket of the defendant, The Pennsylvania Company, at its railway ticket office at Wooster, Ohio. The ticket recites that it is, "Good for continuous pass-

age to destination commencing only on date stamped on back hereof, or on the day following  *  *  *  no stop-over will be allowed on this ticket.  *  *  *  Agent must plainly stamp the date of issue on the back hereof.''

There are other recitals in the ticket which do not pertain to this controversy.  The agent did stamp on the back of the ticket its date which is the 28th of March, 1899.  Provided with this ticket the plaintiff boarded the defendant's train at Wooster, presented said ticket to the conductor who accepted it for that ride and returned the ticket to the plaintiff, and on that train he journeyed toward Bucyrus as far as Crestline.  Crestline was the end of that run.  The train proceeded no farther than Crestline where it arrived at 8 P. M., or thereabouts.  At Crestline the plaintiff left the train and there remained until the following morning the 29th of March, at 7:05, when he boarded one of defendant's trains which ran from Crestline to Bucyrus, each of which points were stations on the same line at which the train regularly stopped.  Upon this latter train he was carried toward Bucyrus as far as the station of North Robison, where the conductor, having refused to accept said ticket for passage on that train from Crestline to Bucyrus, ejected him from the car and train, for the sole reason that the plaintiff insisted on pursuing his journey to Bucyrus, by virtue of said ticket, and the contract expressed by its terms.  Such are in substance the allegations of plaintiff's petition supplemented by the declaration that defendant's servants, in removing him from the train, committed upon his person an assault and battery.  Because of all this, plaintiff seeks recovery.

The answer is a general denial.

These issues came on for trial in the common pleas to a jury, the trial proceeded, and after plaintiff had submitted all his evidence, the court upon motion of the defendant in that behalf, arrested and withdrew the testimony, discharged the jury from further consideration of the case, and gave and entered judgment for defendant.  This, on ground that the evidence of plaintiff showed no right of action against defendant.  The motion of plaintiff for new trial was overruled.  To reverse this

judgment and proceeding of the trial court, this cause in error is instituted, plaintiff claiming that the court erred—

1. In sustaining said motion and withdrawing the evidence and entering judgment for defendant.

2. That from the evidence the plaintiff was entitled to the verdict of the jury.

3. And that the court erred in not submitting the case to the jury upon the evidence and proper instructions as to the law.

It is necessary even at the risk of repeating to state fully the facts disclosed by this record. The evidence of the plaintiff shows that about 6 P. M. on March 28, 1899, he purchased his ticket from Wooster to Bucyrus, of defendant's ticket agent at Wooster. Wooster, Crestline and Bucyrus are stations on the same line of defendant's railroad. The next train passing through Wooster running in the direction of Bucyrus, was the train that he boarded which went no farther than Crestline. Of this fact he was acquainted when he was purchasing the ticket, and fully understood that the train was one of defendant's regular passenger trains, scheduled not to go to Bucyrus, but that Crestline was the end of its run. He had knowledge of the fact that plaintiff had no train running from Crestline to Bucyrus and halting there, which departed from Crestline immediately after or shortly after the arrival of this train at that point. Plaintiff asked the agent before he purchased the ticket if the ticket would be honored on this train, and the agent sold him the ticket without hesitation through to Bucyrus, with the knowledge that it was plaintiff's purpose to use it as far as Crestline, on this train which ran to Crestline and stopped there. The agent gave him no instruction as to what train he should take on his arrival at Crestline, which would make compliance with the conditions of the ticket; and gave him no information as to what time a passenger train would depart for Bucyrus next after his arrival at Crestline. Being on board the train he presented the ticket to the conductor who examined it and punched it, and with this indorsement of it, as a right to proceed from Wooster to Bucyrus, returned the ticket to him.

This conductor who knew that his train went no farther than Crestline, and who knew when the next train would depart from

Cresline to Bucyrus, and who knew that plaintiff must leave this train at Crestline, and must take another train at Crestline for Bucyrus; and that plaintiff had bought the right to ride to Bucyrus on this ticket; and who knew the terms of the ticket, and who is presumed to have known and whose duty it was to know, the requirements of defendant under it, and the construction which defendant put upon the contract, under just the circumstances which then confronted plaintiff; gave plaintiff no instruction as to how he should proceed after his arrival at Crestline to meet the requirements of the contract; and no information as to when the next train would leave Crestline for Bucyrus. The plaintiff did not know that a train departed from Crestline for Bucyrus at 11:55 P. M., which was the fact, but was of the opinion that the next train after his arrival left Crestline for Bucyrus at about 7:05 in the morning. And this train he entered as a passenger for Bucyrus on the morning of March 29th, and from it he was ejected at North Robison in such manner as would seem amounted to an assault and battery. And these were the facts that were taken from the jury and upon which the judgment for defendant was rested, the court holding that under the law, measuring these facts by the contract, the plaintiff should not be permitted to recover.

We will treat the controversy as if the charge of assault and battery were not in the record.

This ticket is a contract made by the defendant with the plaintiff to carry the plaintiff from Wooster to Bucyrus by one continuous passage, commencing on March 28th or 29th, at plaintiff's option, at any time within that period after the hour the ticket was purchased. It is not questioned by defendant that the passage commenced, and properly, on the train that plaintiff boarded at Wooster, and so continued as a journey commenced under the terms of the ticket, to Crestline. And that so far the acts of the parties were strictly in compliance with the contract.

It is urged by the defendant that by not continuing his journey to Bucyrus, by the next train departing for Bucyrus—the train which left Crestline at about 11:55 P. M. of the 28th, the plaintiff took from the defendant the opportunity of complying

with its contract, and voluntarily released defendant from further obligation to perform it, which, under the rule to be found in *Hatton* v. *The Railroad Company,* 39 O. S., 375, and elsewhere, excuses liability.

The stipulation that a passenger shall make under the contract his journey by a continuous passage, is not an unreasonable requirement. And, indeed without specific terms expressed in it, a railroad ticket is held to be an agreement between the carrier and the passenger for a continuous passage between the starting point and destination named in the ticket. So that the pivot of this case is the determination of whether or not under the circumstances evidenced by this record, the progress of this plaintiff as attempted by him, was in fact a continuous passage from Wooster to Bucyrus, as contemplated by the contract, and as embraced in that term, and as construed and interpreted on that occasion by both the plaintiff and defendant.

I have not been able to find a single case that can be said to throw light directly into the face of the case at bar. The cases are very numerous, holding and properly holding, that where a railroad ticket provides for a continuous passage, the holder is not entitled as a matter of right to a stop-over at some intermediate point. And if the passenger voluntarily leaves the train and breaks the journey without the assent of the carrier—after the intermission which he has thus without the consent of the carrier created by discontinuing his journey, he can not again resume it under the same contract. But the continuity of the passage must be broken by the holder of the ticket, and this, without the assent or fault of the carrier. For this doctrine we do not have to look beyond our own Supreme Court, and find it broadly laid down in the case in 39 O. S., 375, to which I have referred.

But each of the cases—and many of them, are to be found cited in 56 L. R. A., at page 769, *et seq.*—stands on its own facts; the doctrine applies no farther than the facts. And in each case it will be found that the holder of the ticket broke the journey, while the carrier was in the performance of the contract upon its part, and was demanding of the carrier without its consent, a piecemeal performance of the contract, which the carrier had at no time modified or violated. And in every instance

the break in the journey had been made in intent and in fact and for a purpose on the part of the ticket holder, which makes it without doubt manifest that each demand to proceed to the destination named in the ticket, was not concerning the journey commenced under the ticket, but was concerning a distinct and separate journey.  In some instances the passenger left the train and went back to other stations on the same line; or proceeded to other towns not on the line; or left the train for the purpose of transacting business at the place where the journey was broken.  But in every instance the intent of the ticket holder was not to proceed then to the destination named in the ticket, but to break the journey then and there, because of that which he deemed required the abandonment of that continuous passage.

The acts of corporations are followed by legal implication as are the acts of individuals.  This contract with the defendant by this ticket, is subject to the same rules of construction and governed by them that are applicable to other contracts between individuals.  And the parties to it are required to go no farther in discharge of it, than substantial compliance with its terms.

The general rule appears to be, that if a continuous passage necessitates a change of trains, it must be continued on the next available train (*The L. & N. R. R. Co.* v. *Klyman* [Tenn.], 56 L. R. A., 769).  Yet this rule is held to yield to an agreement to the contrary, or that which infers consent or amounts to consent that the contract be modified in that behalf.

It is conceded that plaintiff commenced his journey from Wooster to Bucyrus properly under the contract.  But defendant claims that by the terms of the ticket, plaintiff was under obligation to take the next available train departing from Crestline to Bucyrus, after his arrival at Crestline, which was at 11:55 P. M.

Having commenced his journey on a proper train, and a delay and a change of trains at Crestline being necessary, in order that defendant have opportunity to carry plaintiff to Bucyrus, and thus comply with its contract, it became the duty of defendant to instruct plaintiff how and when it intended to comply with its agreement and what was required of him in that behalf.

While this is not an action to recover because of negligence, and negligence as a ground of recovery has no place in the case, yet that no instruction was given by defendant becomes pertinent when connected with the facts appearing in the record, that plaintiff did not know that the first train, after his arrival at Crestline, departed for Bucyrus at 11:55 P. M.; that he did not intentionally break the continuity of the passage. And because defendant, by failing to give him that information, might be deemed to have assented to such modification of the contract as would allow him to proceed on a train that to his knowledge was the first available train for that purpose—while this might not necessarily go to the extent of substantive and express interpretation of the contract by the defendant, it may be deemed to be a consent on defendant's part, that plaintiff himself interpret the contract and modify its literal terms, by doing that which seemed under the circumstances required of him, in order to give defendant an opportunity to comply with the terms of the ticket, by that which was then in his view, an ordinary, usual and direct method of compliance.

The ticket did not inform him what to do next. No person informed him. And the circumstances and the acts and omissions of defendant did tell him that defendant did not, as to that contract, and as defendant at that time considered it, intend that the words "continuous passage" meant an uninterrupted transit from Wooster to Bucyrus.

It is true that the evidence does not show express modification of the contract by competent authority. But it would not seem that absence of evidence in such behalf, is of import in this controversy.

In discharging duties which defendant in good faith owed to plaintiff, or in neglecting to observe them, the agent at Wooster, and the conductor of the train which plaintiff boarded at Wooster, were acting for the defendant.

If neglect to perform a duty which defendant owed plaintiff under the circumstances effected a modification of the contract, and was then in effect a consent, and that from which plaintiff might well infer consent, then the result of failure of defendant's servants performs the same office as would consent or

modification by defendant itself. If their acts or omission to act, being the acts of defendant, led plaintiff to depart from the strict letter of the contract, he had the right to get back to the contract in his way, if his way was a reasonable way.

Now, were the acts of defendant such as to indicate to plaintiff, as a man of ordinary judgment and prudence, and one desiring to substantially comply with the terms of his contract with defendant, that he might continue his journey, under the contract, on the 7:05 morning train to Bucyrus. The ticket was sold to him at Wooster under such circumstances as well led him to believe that he could select that train at Wooster, as the one upon which to commence his trip. The conductor of that train received the ticket, punched it, and thus giving it his indorsement, returned it to plaintiff. No instructions were given plaintiff as to how and when defendant intended to further comply with the contract, or what was required of plaintiff, that he might give defendant opportunity to make performance of it. Of all of which he could have been informed without additional trouble or expense to defendant, and which the relations of the parties and the circumstances of the case required the defendant in good faith to do.

There is present in the record no evidence of intention on plaintiff's part to break the journey or abandon it. His sole object was to continue it. He transacted no business; did no act; entertained no purpose that would interfere with his continuous passage to Bucyrus; and was not aware that he was not in strict compliance with the agreement when he entered the train at Crestline for Bucyrus, or that another train in the meantime had passed which would have been available to him. His first delay had not arisen by any violation of the contract on his part. His failure to take the 11:55 train was not intentional, nor with knowledge that he could do so. And his ignorance of that fact was not assisted by the defendant, whose duty it was under the circumstances to inform him.

He did nothing which indicated the remotest intention to break the continuity of his trip. He presented to the conductor the evidence that he had paid his fare from Wooster to Bucyrus,

and all this within the time in which he might have commenced the journey between the points which defendant had contracted to carry him. And he was ejected from the train for the sole reason that he insisted that defendant comply with the terms of the ticket, as he under the circumstances understood them.

This ticket notified the conductor, who ejected plaintiff, that a contract had been entered into between plaintiff and defendant and that performance of its conditions had commenced. This being true when he, the conductor, undertook to determine the rights of the plaintiff under the contract, he must not make a wrong decision. He could not, without further information, apply the rule laid down in the Shelton case in 29 O. S., 315, unless to do so was no mistake. It was not as if the ticket had been wrongfully taken up, as in that case, by another conductor, and plaintiff had demanded to be carried to Bucyrus without any ticket at all. And hence application of the naked rule, that a passenger without a ticket who refused to pay his fare, must submit to ejection from the train, was as to this plaintiff, under the circumstances, application of it at defendant's peril.

We think the facts measured by the contract and the law, should have gone to the jury, and that in arresting the evidence and in entering judgment for defendant the common pleas was in error.

The judgment is therefore reversed.

*J. W. Coulter* and *T. E. Powell*, for plaintiff in error.

*S. S. Wheeler*, for defendant in error.