## BALTIMORE & OHIO SOUTHWESTERN RAILROAD COMPANY *v.* EVANS.

[No. 21,069. Filed November 26, 1907.]

1. CONTRACTS.—*Railroads.*—*Tickets.*—*Limitations.*—The purchase, at a reduced rate, and acceptance of a coupon ticket limited to the use of the purchaser and the members of his family dependent upon him, constitute a contract the terms of which are binding upon both parties. p. 420.

2. SAME.—*Railroads.*—*Tickets.*—*Forfeitures.*—*Consideration.*—The reduction of the regular rate of fare, in the purchase of a family coupon ticket, constitutes a sufficient consideration to support a limitation therein that the use of such ticket by others shall involve a forfeiture thereof. p. 421.

3. WORDS AND PHRASES.—*"Involves."*—*Railroads.*—*Tickets.*—*Forfeitures.*—A condition in a family coupon ticket that the use thereof by others than the family "involves" a forfeiture thereof, imports that such unauthorized use implies, includes, or necessitates a forfeiture of such ticket. p. 426.

4. WAIVER.—*Railroads.*—*Limited Tickets.*—*Breach.*—A railroad company cannot be held to waive the breach of a condition in a family coupon ticket, unless such company has knowledge of such breach. p. 426.

5. RAILROADS.—*Ejection of Passenger.*—*Forfeited Ticket.*—*Wrong Reason Assigned.*—The expulsion of a passenger by a railroad conductor because of the alleged expiration of the family coupon ticket on which such passenger was riding is not wrongful, where it is shown that such ticket had become forfeited for the misuse thereof, though the conductor at the time of the expulsion was ignorant of such misuse. p. 427.

6. APPEAL.—*Briefs.*—*Points.*—Alleged objections to the transcript, not mentioned in the points in the brief, will not be considered. p. 429.

From Clark Circuit Court; *Harry C. Montgomery,* Judge.

Action by Sargent W. Evans against the Baltimore & Ohio Southwestern Railroad Company. From a judgment for plaintiff for $100, defendant appeals. Transferred from Appellate Court under §1399 Burns 1908, Acts 1901, p. 565, §15. *Reversed.*

*Charles L. Jewett, H. E. Jewett* and *Edward Barton,* for appellant.

*J. K. Marsh,* for appellee.

JORDAN, J.—Action by appellee to recover damages on account of an alleged wrongful expulsion by appellant railroad company from its train of cars. Appellee, as complainant below, alleges, *inter alia,* that the defendant is a corporation organized and existing under the laws of the State of Indiana; that it is a common carrier, and for more than two years last past has been engaged in operating, for the carriage of passengers for hire, a railroad running from Cincinnati, Ohio, into and through the State of Indiana; that part of its said line passes through Clark county, Indiana, to the city of Louisville, Kentucky; that the town of Otisco, in Clark county, in which town the plaintiff had resided for over twenty years, is a station on said line of railroad; that on November 9; 1904, he purchased from the defendant's agent in charge of its station office at said town of Otisco a "twenty-trip family ticket," which defendant kept for sale at said station, paying for such ticket $8; that this ticket had attached thereto twenty coupons, each of which entitled the plaintiff to be carried over defendant's road between said stations of Otisco and Louisville, upon any of its trains stopping at the former station; that the time for which the ticket was good for use on defendant's road was limited to four months from November 9, 1904, the date of purchase, making the date of expiration March 9, 1905; that through and by the mistake and negligence of defendant's selling agent the ticket was made to expire on March 9, 1904, said date being written on the ticket by defendant's agent at the time of the sale thereof.

The complaint alleges other facts going to show that on December 2, 1904, plaintiff boarded one of defendant's trains at the town of Otisco for the purpose of being carried thereon as a passenger to the city of Louisville, Kentucky; that when he took passage on said train he had in his possession the ticket in controversy, which still had attached thereto four unused coupons, each of which entitled him to be carried either way between the aforesaid stations;

that the agent of the defendant, the conductor in charge of said train, called upon plaintiff to pay the regular fare from Otisco to Louisville; that, in response to said request and demand, plaintiff presented to said conductor the ticket in question with its four coupons attached; that on examination thereof, the conductor refused to honor it, and declined to accept any of its coupons so attached as evidence that plaintiff had paid his fare and was therefore entitled to be carried as a passenger over said railroad; that the conductor demanded that plaintiff either pay the regular fare from Otisco to the city of Louisville or leave the train, and contended that, because the date, as written on the first page of the cover thereof, as the time upon which the ticket would expire, was March 4, 1904, said ticket was no longer good, and did not entitle plaintiff to be carried thereon. Plaintiff alleges that he explained to the conductor that said date must be a mistake, and that March 9, 1904, as written upon the ticket, was intended for March 9, 1905, the date of expiration; that, notwithstanding said explanations as given by the plaintiff to the conductor to show that his ticket had not expired, the latter still refused to honor it, and then and there requested that plaintiff pay his fare from Otisco to Louisville, which payment he refused to make on the ground that he was entitled to be carried over defendant's road upon said ticket; that thereupon the conductor caused the train to be stopped, and wrongfully and in a rude and insolent manner, and in the hearing and presence of the other passengers, ejected plaintiff from the train. The pleading closes with the allegation that by said expulsion the plaintiff was greatly outraged, humiliated, etc., and damages are demanded in the sum of $3,000. In the light of the facts alleged it is manifest that plaintiff bases his action herein wholly upon tort and not upon contract.

The defendant unsuccessfully demurred to the complaint for want of facts, and thereafter filed an answer in five paragraphs, the first being the general denial. The second

paragraph of the answer avers: "That the coupon ticket mentioned in plaintiff's complaint was a special rate ticket, sold at a reduced rate in consideration that the same should be purchased, held and used by the plaintiff in conformity with the contract printed and written upon said ticket and made part thereof; that said ticket was called a 'twenty-trip family ticket,' and contained twenty coupons, each one of which entitled the plaintiff, or a dependent member of his family, to passage between Otisco station and Louisville station on defendant's railroad, when presented and used under the conditions named in said contract; that said contract was partly printed and partly written on said ticket, and a copy of the material parts thereof is filed with and made a part of this answer, marked exhibit A; that the plaintiff purchased said ticket at a reduced and less rate than the regular rate of fare between Otisco and Louisville, in consideration of the agreements and obligations upon the plaintiff in said contract contained, and, among others, the following agreement and obligations on the part of the plaintiff," etc. This agreement is embodied in the paragraph, and is the same one hereinafter set out in the evidence. The paragraph then proceeds to show that the plaintiff, after the purchase of the ticket alleged in his complaint, but previously to December 2, 1904, the date of the expulsion, had violated said contract by transferring said ticket to certain persons named and mentioned in said pleading; that such transfer of the ticket consisted in plaintiff's allowing and permitting each of the aforesaid named persons to use it and travel upon one of the coupons thereof over defendant's railroad between Otisco and Louisville; that neither of the persons so using said ticket, as aforesaid, was a dependent member of plaintiff's family; that plaintiff, by reason of the wrongful transfers and the use of said ticket, had, under its terms and conditions, forfeited all of his rights thereunder before December 2, 1904, and therefore was not at the time the ticket was presented to the con-

ductor, as alleged in the complaint, entitled to passage thereon upon defendant's said train of cars.

With some exceptions, the fourth paragraph of the answer is substantially the same as the second. It sets out the contract embraced in the ticket in like manner as does the second, and alleges, among other things, that after the purchase of said ticket on November 9, 1904, by plaintiff, but prior to December 2, 1904, to wit, on November 19 of the latter year, plaintiff violated said contract, and thereby forfeited all of his rights under the ticket to be carried over appellant's railroad, for the reason that on said November 19, 1904, he sold and transferred, in consideration of $1.60 to him paid, the use of said ticket to Bessie Kirk and her sister, and permitted them to take and have possession of the ticket and use four of the coupons attached thereto for passage over defendant's railroad from Otisco to the city of Louisville and return; that said Bessie Kirk and her sister were not dependent members of the plaintiff's family, nor were they in any manner connected with the same; that, after using said ticket, the aforesaid parties returned it to the plaintiff, and that thereafter, upon the occasion alleged in his complaint, he attempted to use it for his passage from Otisco to Louisville; that the ticket so presented by plaintiff to defendant's conductor, as alleged in the complaint, was the same ticket which the plaintiff had previously sold and transferred to said Bessie Kirk and her sister, as hereinbefore alleged. Plaintiff successfully demurred to the second, third and fourth paragraphs of the answer, and replied to the fifth. As he, in his complaint, only disclosed or exhibited such provisions of the ticket in question as were favorable or available to him, it was the right or privilege of defendant to set up in its answer any of its provisions or stipulations, and thereby seek to avail itself of such affirmative defense. Under the issues joined between the parties there was a trial by jury and a verdict returned in favor of the plaintiff, assessing his damages at $100. Defendant

moved for a new trial, assigning as grounds therefor that the verdict was not sustained by sufficient evidence, that it was contrary to law, and that the court erred in giving and refusing certain instructions. This motion was overruled, and judgment was rendered on the verdict. The errors assigned and relied upon for reversal are predicated upon the rulings of the trial court in sustaining the demurrer to the second, third and fourth paragraphs of answer and in denying the motion for a new trial.

The evidence in the record may be said to establish the following facts: Defendant is an incorporated railroad company, engaged as a common carrier in operating the railroad as alleged in the complaint. Plaintiff is a resident of the town of Otisco, in Clark county, Indiana, and is engaged at that place as a retail merchant. This town is a station situated on defendant's railroad about twenty-five miles distant from the city of Louisville, Kentucky. The regular fare for a single passage between Otisco and Louisville is sixty-nine cents. At defendant's office in said town it kept for sale what is known as a "twenty-coupon family ticket." This ticket contained twenty coupons, each of which was good for a single passage over defendant's road, either way, between the aforesaid stations, and was sold and issued for $8, which made the fare or rate for a single trip between Otisco and Louisville forty cents, less than two-thirds of the regular fare. These tickets, in consideration of such reduced fare, were sold under a special contract, and their use was expressly limited to the purchaser and the dependent members of his family. The ticket in dispute was introduced in evidence at the trial by plaintiff. It was shown that the latter purchased it on November 9, 1904, from defendant's agent at said station of Otisco. The date of purchase was stamped on the cover thereof. The ticket had attached thereto twenty coupons, each of which was good for passage either way between the stations mentioned. On a part of the ticket, in a place provided for that pur-

pose, the name of plaintiff as purchaser thereof was written in ink, as was also the date on which the ticket would expire, viz., four months from the date of sale. It appears that defendant's selling agent, through a mistake, wrote March 9, 1904, as the time of the expiration of the ticket, instead of March 9, 1905, as it should have been. Plaintiff, after the purchase of this ticket, used it himself for passage over defendant's road. He also appears to have permitted other persons to use it, as herein shown. On December 2, 1904, four of the coupons remained unused. The ticket, as given in evidence, omitting the coupons, is as follows:

"Issued by the Baltimore & Ohio Southwestern Railroad Company.

Twenty-trip family ticket. Good for Mr. S. W. Evans. Between Louisville and Otisco on or before March 9, 1904.

Form L.35.                    4028                    4 months.

### Contract.

Each coupon, when not detached from the contract is good for one passage on any passenger-train of the Baltimore & Ohio Southwestern Railroad Company stopping at stations named on this ticket, for the person named on the reverse side of this cover, or for dependent members of family, under conditions named in contract.

Must be used within the dates named on first page of cover.

O. P. McCarty, General Passenger Agent.

Baltimore and Ohio Southwestern Railroad Company
Twenty-trip Family Ticket Contract.

(1) It is hereby expressly understood and contracted by the purchaser of this ticket that it is good for use of person named hereon, or for dependent members of family, and must be used within four months from date of sale; that a transfer of it for one or more trips involves its forfeiture.

(2) It is good only on such regular passenger-trains as stop at the stations named hereon, and allows trans-

portation of personal baggage or small parcels of marketing only.

. (3) That this ticket must be presented to the conductor who will detach a coupon for each and every ride, and it will be void after the date specified thereon.

(4) That this ticket is, and shall be, considered the only valid evidence that fare is paid, and in case it is lost or mislaid local rates must be paid to conductors and fares so collected will not be returned, nor will a duplicate free ticket be issued therefor.

Form L.35. O. P. McCarty, General Passenger Agent."

On December 2, 1904, plaintiff, desiring to go to Louisville on business, boarded a passenger-train of defendant's road for that city. He had in his possession at that time the ticket in controversy, which then contained four unused coupons. It appears that he was not acquainted with the conductor in charge of the train. In response to the conductor's demand for his fare he tendered the ticket in question. On an examination thereof the conductor appears to have contended that the ticket had expired. This plaintiff denied, and pointed to the date of the ticket and claimed that there must be a mistake in the date of expiration, which, as he asserted, he had not before discovered. The date of sale, as it appeared upon the ticket, was dim, and the conductor, as he testified at the trial, was unable "to make it out." He appears to have made a second examination and again informed plaintiff that the ticket was "an old one" and was not good, and requested him either to pay his fare or leave the train. Plaintiff, in response to this, said: "Put me off," and refused to pay the required fare. The conductor then stopped the train and directed plaintiff to get off, which he accordingly did, testifying at the trial that he did so because the conductor ordered him to leave the train or pay his fare. He declined to pay the fare demanded, on the ground that his ticket was good and he was entitled to be carried thereon. No force or violence whatever appears to have been used by the conductor to eject him, and

no harsh or insulting language was employed by the con-
ductor on said occasion. After alighting from the train
plaintiff started on his return to his home at Otisco, which
was something over two miles from the place where he left the
train. On the road he stopped and visited for some time at
the home of his married daughter, who lived near the high-
way over which he was traveling. He arrived at his place of
business in Otisco in about three hours from the time he left
the train. On the next day he went to Louisville over de-
fendant's road. He, by his own undisputed admission and
statement, fully established upon the trial that a short time
after he purchased the ticket in controversy, but prior to
December 2, 1904, he permitted his married son, Henry
Evans, and also the wife of the latter, to use the ticket for
passage over defendant's road from Louisville to Otisco
and return. His said son was of the age of thirty-six
years, and resided with his family in the city of Louis-
ville. The time Henry Evans and his wife were permitted
to use the ticket for passage was upon an occasion when they
were visiting at the home of plaintiff. These parties in no
manner are shown to have been dependent members of plain-
tiff's family. On another occasion, after plaintiff had pur-
chased and accepted this ticket, and a short time only before
December 2, 1904, he transferred the ticket to Miss Katie
Kirk to be used by her and her sister, Bessie Kirk, for pas-
sage over defendant's road from Otisco to Louisville and re-
turn. Miss Kirk, as shown, procured the ticket from plain-
tiff on Saturday, and on the Monday following, after she and
her sister had used it for passage over defendant's road from
Otisco to Louisville and return, she returned it to plaintiff,
and paid him $1.60 for the use of the four coupons. Neither
of the Kirk sisters was a dependent member of plaintiff's
family, nor in any manner connected therewith. There is
no evidence to show that defendant company, at the time
plaintiff was expelled, or prior thereto, had any knowledge
or notice that he had misused his ticket by permitting the

persons heretofore mentioned to use it for passage over its road, nor that it, with knowledge of such misuse, assented thereto. Neither is there any evidence to show that defendant's conductors at the time they accepted the ticket for the passage of Henry Evans and his wife, or for passage by the Kirk sisters, knew or had any knowledge that the parties were not dependent members of plaintiff's family, and that plaintiff was misusing his ticket.

The principal question argued by appellant's counsel, in discussing the alleged erroneous rulings of the court in sustaining the demurrer to the second and fourth paragraphs of the answer and in refusing to charge the jury as requested by appellant in instruction three, and also as presented by the undisputed facts established by the evidence, is, was appellee, at the time he was expelled from the train in controversy, legally entitled to be carried as a passenger upon the ticket in question, and can his expulsion under the facts be justified by appellant in this action, on the ground that appellee, prior to his removal from the train, had violated the contract contained in the ticket, and, therefore, had forfeited his right to be carried as a passenger over appellant's road upon said ticket? Counsel for appellant in their brief, in discussing the forfeiture branch of the case, say: "We treat the mistake of the agent in dating the ticket, and its obliterated condition at the time it was presented, as beside the question, and argue it from the standpoint of a valid ticket originally, and upon which the dates had been correctly stated. In other words, assuming that this ticket, instead of showing on its face that it expired March 9, 1904, had shown that it would not expire until March 9, 1905, and had been presented by Evans under the circumstances disclosed by the answer and the evidence, was Evans rightfully entitled to be carried to Louisville upon the ticket?" In fact it may be said that the theory of appellant upon this phase of the case, as presented by the second and fourth paragraphs of its answer and by instruction three, as requested but refused, and

under the undisputed facts established by the evidence, is that appellee, by allowing the ticket in question to be used for one or more trips over appellant's road, by persons who were not dependent members of his family, thereby, under its terms and conditions, forfeited his right further to use the ticket for passage, and that, upon his refusal to pay his fare, on the occasion of his expulsion, appellant's agent was justified in requiring him to leave the train, as shown by the evidence, and he cannot recover in this action.

Counsel for appellee, however, denies the sufficiency of the paragraphs of the answer, and further contends that the facts relied upon under the evidence as involving the forfeiture are not sufficient, for the reason that a forfeiture is not favored by law. He further argues that appellant cannot justify in this action the expulsion of appellee at the time and upon the occasion in question, because its conductor placed the right to demand that appellee either pay his fare or leave the train, not upon the ground that he had forfeited his ticket because he had violated the contract in the use thereof, as shown, but upon the ground that the ticket was an old one, or had expired, consequently it is asserted that appellant must be held to be estopped from availing itself of the forfeiture of the ticket in this action. He further argues that if the ticket was forfeited because it had been transferred and misused, as shown, then, as it appears that after such usage, but before December 2, 1904, appellant had honored it for appellee's passage without objection, the alleged forfeiture must thereby be considered as waived.

It is settled beyond dispute that the part of the ticket in controversy, whereby its use for passage over appellant's road is expressly limited to appellee and the dependent members of his family, and the further stipulation therein that its transfer for one or more trips should involve a forfeiture, constituted a contract between appellant and appellee, and he, by accepting the ticket at the time of its sale, assented to such limitations, terms, conditions or

stipulations, and consequently is bound thereby. *Terre Haute, etc., R. Co.* v. *Fitzgerald* (1874), 47 Ind. 79; *Pullman Palace Car Co.* v. *Taylor* (1879), 65 Ind. 153, 32 Am. Rep. 57; *Pittsburgh, etc., R. Co.* v. *Higgs* (1906), 165 Ind. 694, 4 L. R. A. (N. S.) 1081; *Mosher* v. *St. Louis, etc., R. Co.* (1888), 127 U. S. 390, 32 L. Ed. 249, 8 Sup. Ct. 1324; 6 Cyc. Law and Proc., 570, 571.

It is equally well settled that, in consideration of the reduced rate for which the ticket was sold by appellant to appellee, it had the right expressly to prescribe therein 2. reasonable limitations, conditions and terms upon which said ticket was to be used; or, in other words, it had the right, as it did, to limit or confine the use of the ticket, for passage over its road, to appellee and the dependent members of his family, and further to stipulate that the transfer by appellee of its use for passage, for one or more trips, to a person not a dependent member of his family, should involve a forfeiture of appellee's right thereto. *Post* v. *Chicago, etc., R. Co.* (1883), 14 Neb. 110, 15 N. W. 225, 45 Am. Rep. 100; *Drummond* v. *Southern Pac. Co.* (1891), 7 Utah 118, 25 Pac. 733; *Boylan* v. *Hot Springs R. Co.* (1889), 132 U. S. 146, 33 L. Ed. 290, 10 Sup. Ct. 50; *Pennington* v. *Philadelphia, etc., R. Co.* (1883), 62 Md. 95; *Rahilly* v. *St. Paul, etc., R. Co.* (1896), 66 Minn. 153, 68 N. W. 853; *Eastman* v. *Maine Cent. Railroad* (1899), 70 N. H. 240, 46 Atl. 54; *Levinson* v. *Texas, etc., R. Co.* (1898), (Tex. Civ. App), 43 S. W. 1032; *Freidenrich* v. *Baltimore, etc., R. Co.* (1880), 53 Md. 201; *Houston, etc., R. Co.* v. *Ritter* (1897), 16 Tex. Civ. App. 482, 41 S. W. 753; 3 Thompson, Negligence (2d ed.), §2583; 4 Elliott, Railroads, §1599.

The question presented and decided in *Freidenrich* v. *Baltimore, etc., R. Co., supra,* is quite analogous to the one raised in this appeal by counsel for appellant in respect to the forfeiture of appellee's ticket. The action in the case last cited was instituted by appellant, Freidenrich, to recover damages for an alleged wrongful expulsion from the cars of

appellee. It appears that he had purchased from the railroad company a commutation ticket, good for passage over appellee's road between Baltimore and Washington for three months from the date of issue, February 1, 1877. This ticket, not being an ordinary passenger ticket, was sold and issued by the company only upon special terms and stipulations prescribed on its face. Among these were the following: " 'To be used *only* by M. A. Freidenrich between Baltimore and Washington from February 1, 1877, to April 30, 1877,' and on the margin, 'if found in the hands of any one but the party in whose name it is issued, this ticket will be forfeited and taken up.' " (Our italics.) Before the expiration of the time limit appellant boarded, at Baltimore, one of the railroad company's cars for the purpose of being carried on his ticket to Washington. After the train was a few miles beyond Baltimore the conductor in charge thereof took up appellant's ticket and demanded that he pay the usual passenger fare. On what ground the conductor based his right to take up appellant's ticket is not disclosed by the case as reported. Appellant, on refusing to pay his fare, was accordingly put off the train by the conductor, no force or violence, or harsh language being used by the latter in removing him. The principal facts upon which the railroad company relied at the trial to justify the act of its conductor in removing appellant from its train were: That the ticket in question had been used for passage over its railroad by persons other than appellant after it had been issued to him, but before the time of his expulsion from the car. Upon a trial by jury defendant company had a verdict in its favor, and the plaintiff appealed, and claimed on appeal that the trial court erred in giving certain instructions to the jury, wherein it was substantially stated that if the jury found that the ticket in evidence was purchased under a special contract between the plaintiff and defendant, by which the plaintiff agreed that, in consideration of the price paid therefor, it should be used only by him in riding on the cars of

the defendant during the time limited by the terms thereof, and between the stations designated therein, and was to be forfeited and taken up if used for such purpose by persons other than the plaintiff; and if the jury further found from the evidence that said ticket was used by persons other than the plaintiff in riding in defendant's cars, and that the agents of the defendant, after such use of said ticket by persons other than the plaintiff, took up said ticket, then by the terms and conditions of such agreement the rights and privileges given and granted by such ticket became forfeited, and the defendant or its agents had the right to take up such ticket whenever found, even in the hands of the person to whom it was issued. The trial court further charged that if the jury believed that the plaintiff was ejected from defendant's cars at the time and place and under the circumstances detailed by him in the evidence, nevertheless he was not entitled to recover under the pleadings and evidence, if the jury further found from the evidence that any person other than plaintiff had previously used the same ticket traveling on its cars between the cities of Baltimore and Washington, provided the jury further found that the defendant's conductors did not know but that the person who previously used the ticket was rightfully entitled to use it, being the same person to whom the ticket had been actually issued. The charge further advised the jury that if they found from the evidence that the plaintiff, at the time and place where he was ejected from defendant's cars, was traveling thereon with the commutation ticket in evidence in the case, nevertheless the possession of such ticket did not entitle him to use it in traveling on defendant's cars if the jury shall further believe from all the evidence that such ticket had, previously to that time, been used by a person or persons other than plaintiff in riding on said train and between the cities of Baltimore and Washington, with the knowledge and consent of the plaintiff. The court approved and sustained these charges as announcing a correct principle of law applicable

to the case, and held that the ticket was properly taken from appellant if, before the time of such taking, it had been used by any person other than appellant, with his connivance, and if so used the railroad company's agent had thereafter the right to take it up, even when in the hands of appellant himself, to whom it was issued.   In considering the question in that appeal, the court said:·  ''It [the ticket] was the subject of contract between the company and the passenger, and the conditions and stipulations annexed became mutually binding so soon as the ticket was issued by the one and accepted by the other.   The company thereby became bound to carry the appellant upon its cars according to the terms of its undertaking, and he, on his part, was bound by all of the terms and conditions upon which the ticket was issued.   Among these conditions, as before stated, was its forfeiture if used by another person, and if so used it was to be taken up.''   Evidence in that case was given to prove that after the issue of the ticket, but before the expulsion of appellant, it had been used, for transportation over the company's railroad, by persons other than appellant.   It is true, as a primal rule, that forfeitures are not favored either in equity or at law.   It follows from this principle that provisions or stipulations of doubtful intent in instruments or documents providing for forfeitures are to receive a strict construction against the person for whose benefit they are inserted.   There is, however, no room for the application of this principle to the provision contained in the contract here involved.   It is not impressed with any doubtful intent or meaning as to what was intended by the parties thereto.   Appellant and appellee, by the express stipulation that the use of the ticket should be limited to him and the dependent members of his family, and that the ''transfer for one or more trips involves a forfeiture,'' certainly understood what the legal results or consequences would be—*i. e.*, forfeiture—in the event of a transfer of the use of the ticket to persons other than the

dependent members of his family, in violation of the stipulation in the contract.

The case of *Eastman* v. *Maine Cent. Railroad, supra,* was an action in assumpsit to recover the price of certain coupons of a mileage ticket. The question of forfeiture of this ticket by the plaintiff was raised and presented in that action, on the ground that he had violated the contract under which the ticket had been sold and issued to him, by allowing a person other than himself to use it for passage over defendant's road. Under its terms the ticket in question was limited to the use of the purchaser, and provided for a forfeiture in the event it was presented by a person other than the one in whose name it had been issued. After the violation of the contract by the plaintiff, in allowing another person to use his ticket for transportation, it was taken up by the company's conducter as forfeited, and returned to the company's general office. The court in that case denied the right of the plaintiff to recover, justifying under the facts the right of the company's agent to take up the ticket. In considering the question of forfeiture, the court in that case, by Blodgett, C. J., said: "The plaintiff made the contract voluntarily and understandingly; and the responsibility for its termination rests solely with himself. There is no rule better settled or more just in itself than that the parties who voluntarily and understandingly enter into such contracts must be governed by their terms, and are subject to the legal consequences of their violation. Having intentionally violated the express conditions of his contract, the plaintiff's mileage book justly became forfeited in accordance with those conditions and for the resulting pecuniary loss to him there is nobody to blame but himself. In such a case the law affords no relief. A party cannot maintain an action founded upon his own dishonesty and fraud."

In like manner, in the case before us, under the facts, it may be asserted that appellee, of his own free will, in order

to secure a reduced fare over appellant's road, entered into the special contract upon which the ticket was issued to him, and he must be held to be controlled by the express terms and conditions as therein prescribed, to which he assented, and under the law must be subjected to the legal consequences which he agreed should follow for his intentional violation of the contract. The wrongful use of the ticket, which he permitted, as disclosed in the evidence, was in fraud of appellant's rights under the contract, and if he could so misuse his ticket with impunity, then the condition in the contract against such transfer or use would be futile, and of no avail to the railroad company. By the terms "involves its forfeiture," as employed in the contract, the parties thereto certainly contemplated that the usual meaning accorded to the word "involves" was intended. As defined by our lexicographers, the following, among others, is given as the meaning of the word "involve:" "To imply;" "to include;" or "necessitate as a result or legal consequence." Standard Dict.; 23 Cyc. Law and Proc., 352, 353.

In the case of *Insurance Co., etc.,* v. *Martin* (1898), 151 Ind. 209, the forfeiture of a fire insurance policy was involved on the ground that a transfer of the property insured, before its destruction by fire, had been made in violation of a stipulation in the policy providing that if a transfer of the, property was made without the consent of the insurance company the insurance should cease from the date of such transfer. In that appeal, in reviewing the question raised, we affirmed that the alienation of the insured property in violation of the prohibition or condition contained in the policy *ipso facto* avoided or invalidated the policy, unless the transferee, with the consent of the company, had taken an assignment of the policy. We perceive no reason why a similar rule is not applicable to the question of forfeiture involved in this appeal. By the voluntary transfer

of his ticket, as shown under the facts, in violation of the positive stipulation embraced in the contract, appellee may be said to have, *ipso facto,* forfeited his right longer to use the ticket for transportation over appellant's road. Consequently, at the time of his expulsion, he had no right to require appellant company to carry him over its road on said ticket, unless it had legally waived the wrongful transfer by him of his ticket, and, in the absence of such waiver, it was his duty upon the occasion in question either to pay his fare or leave the train, as he was requested to do by appellant's conductor. There is, however, under the pleadings upon which the cause was tried, no issue of waiver in the case. Again, upon another view, it may be said, in answer to the contention of counsel for appellee, that the appellant waived its right to exact a forfeiture, for the reason that after the transfers in question it honored the ticket, but, as previously shown, there is nothing to disclose that the railroad company in so honoring appellee's ticket had any knowledge or notice whatever that he in any manner had incurred a forfeiture thereof. The authorities affirm that a waiver is the intentional relinquishment of a known right, and there can be no waiver by a person unless distinctly made with a full knowledge of the right or rights which he intends to waive. *Ohio Valley Buggy Co.* v. *Anderson Forging Co.* (1907), 168 Ind. 593, and authorities cited; *Bucklen* v. *Johnson* (1898), 19 Ind. App. 406, and authorities cited.

As hereinbefore mentioned, counsel for appellee claims that appellant cannot be permitted to justify the act of its conductor in declining to accept appellee's ticket, and

5.  in removing him from the train upon his refusal to pay his fare, because the conductor assigned as a reason for his right in so doing that the ticket was an old one, and had expired, instead of assigning as a reason therefor that appellee had forfeited his right to be carried upon the ticket. This contention is untenable. If his right to be transported over appellant's road on the ticket in ques-

tion had, at the time of his expulsion, been forfeited on account of his violation of the contract, it is of no material importance that the act of the conductor in not accepting the ticket and in removing him from the train was technically placed on the wrong ground. It does not appear either that appellant or its conductor at that time had any knowledge that appellee had forfeited his right to use the ticket for passage. Again, it may be said that back of the act of the conductor was the fact that appellee's right longer to be carried upon the ticket had been forfeited, and that the ticket, therefore, was invalid. That fact appearing, it certainly can make no material difference that the conductor at the time in question assigned the wrong reason for his action in the premises. A case on a parity upon the point here presented is *Louisville, etc., R. Co.* v. *Klyman* (1902), 108 Tenn. 304, 67 S. W. 472, 91 Am. St. 755, 56 L. R. A. 769. That was an action by the plaintiff below to recover damages for the attempt of the railroad company's conductor forcibly to expel him from its train. The ticket involved in that case was issued to appellee and was good under its terms only for a continuous passage by him between places therein named. He appears to have violated the provisions of his ticket by stopping over, without the consent of the railroad company, at a certain intermediate station after he had commenced his journey upon the ticket in question. After the lapse of several days he again resumed his journey over the defendant's road. The conductor in charge of the train which he boarded challenged his ticket on the ground that it was "out of date," and demanded of him his fare, and, upon his refusal to pay, stopped the train and was in the act of forcibly expelling him therefrom, when a fellow passenger interposed and paid for him the required fare, thereby preventing his expulsion. It was held in that appeal that by reason of the plaintiff's stopping over in violation of the terms or conditions of his ticket he had forfeited his right longer to travel thereon, and that the

railroad compàny was not precluded in the action from availing itself of the forfeiture of the ticket as a defense, by reason of the fact that its conductor, in refusing plaintiff transportation on the ticket, gave as a reason therefor that the ticket was "out of date," instead of that his right to be carried thereon had been forfeited. In passing upon the question as raised in that case, the court said: "On the defendant's theory of the facts, the ticket had become invalid for any and every purpose, and, that being true, no particular legal importance should be attached to the reason assigned by the conductor for its rejection. If the ticket was invalid, it can make no difference that a wrong reason, as plaintiff contends, was assigned for its invalidity. Whatever the reason given, the fact of invalidity and the plaintiff's lack of right to proceed remain the same."

Counsel for appelle, in the argument in his brief, urges some objections against the transcript on the ground of an alleged defective precipe. These objections, however, 6. were not stated in the points in his brief, but are made for the first time in his argument thereon. For this reason, under the rules of the court, they are not considered. It follows, and we so conclude, for the reasons herein stated, that under the facts established by the evidence appellee was not entitled to recover, and the verdict of the jury should have been for appellant. The court erred in denying the motion for a new trial.

Judgment reversed, and cause remanded, with instructions to the lower court to grant appellant a new trial.